ACORN PONDS AT NORTH HILLS, Plaintiff,

v.

The INCORPORATED VILLAGE OF NORTH HILLS, Lowell H. Kane, Individually and as Mayor of The Incorporated Village of North Hills, Bentley H. Sherman, Individually and as Deputy Mayor and Trustee of The Incorporated Village of North Hills, William J. Baker, Louis Foti and Joseph Brucia, Individually and as Members of the Board of Trustees of The Incorporated Village of North Hills, and Nick Massand, Individually and as Village Engineer of The Incorporated Village of North Hills, Defendants.

No. CV 81–1573.

United States District Court, E.D. New York.

July 22, 1985.

---

Meltzer, Lippe & Goldstein, P.C. (William D. Denson, of counsel), Mineola, N.Y., for plaintiff.

Jaspan, Ginsberg, Ehrlich, Reich & Levin except defendant Brucia. (A. Thomas Levin, of counsel), Garden City, N.Y., for defendants.

*Memorandum of Decision and Order*

MISHLER, District Judge.

Defendants, by two separate notices of motion (dated March 15, 1985 and March 18, 1985), move for summary judgment, pursuant to Fed.R.Civ.P. 56, on various grounds.

COMPLAINT

The claims allege that defendants, in their capacities as hereafter described, individually and as part of a common scheme and plan, deprived the plaintiffs of their right to equal protection under the law and their right to due process by arbitrarily and capriciously refusing to issue certificates of occupancy to which they were entitled, in

violation of 42 U.S.C. §§ 1983 and 1985.[1] The complaint sets forth in detail the acts which plaintiff alleges were "in excess of [defendants'] lawful authority" (¶ 25) and (in the claim directed only against defendants Sherman and Baker) done to enhance the value of their condominium units.

HISTORY

Acorn Ponds at North Hills ("APNH") is a partnership which was organized prior to May, 1976 to develop land located in The Incorporated Village of North Hills ("North Hills") by building three condominium units known as APNH I, II and III, consisting of 41 separate buildings. A final revised site plan for the three condominiums was approved by North Hills on or about April 17, 1976. During the period from May 1976 to April 1977, APNH applied for, and was granted, building permits for all 41 buildings comprising the three condominium units. Building permits were also granted during the period from May, 1976 to March, 1978 for the construction of facilities to be shared in common by all the prospective condominium owners, i.e., club-house, tennis court, pool and pump house.

In the fall of 1977, APNH I was completed and certificates of occupancy issued. Defendants, Bentley H. Sherman and William J. Baker, each purchased an apartment in APNH I. The condominium owners formed an Ad Hoc Committee ("AHC") for the purpose of forwarding on complaints and resolving disputes between them and APNH.

In April, 1978, North Hills held an election for the offices of mayor and trustee. Defendant, Lowell H. Kane, was the successful candidate for mayor; defendant Joseph Brucia was the successful candidate for trustee. Kane and Brucia campaigned on a promise to halt the use of land in North Hills for condominium ownership. Sherman and Baker campaigned for the election of Kane and Brucia and their pledge to halt the construction of condominiums in North Hills. At the time of the election the buildings comprising APNH II were being erected. Soon after Kane and Brucia assumed the duties of the respective offices to which they were elected, North Hills hired defendant Nicholas Massand as Village Engineer and Building Inspector. Sherman and Baker were appointed members of the North Hills' Board of Zoning and Appeals in April, 1978 and were elected to the Board of Trustees of North Hills in April, 1979.

Sometime in 1978, the AHC submitted demands for improving APNH I, including a new drainage system to connect with an underground sewer drainage system to replace splash blocks that had previously been installed and approved by the former building inspector. APNH first refused to comply with this demand. However, after Massand refused to inspect buildings completed in APNH II, which was an essential step in seeking certificates of occupancy ("C of O's") for the buildings in which apartments were ready for sale, APNH submitted to the demand and made the change in the drainage system.[2]

Beginning in or about August, 1978, North Hills demanded fees from APNH for inspection of ongoing construction and landscaping by the Village Engineer and services performed by the engineer hired by AHC in assisting Massand. North Hills threatened to withhold issuance of C of O's until the sums demanded were paid. This court in a memorandum of decision and order found "no authorization for the imposition of post-approval costs" and granted APNH's motion for a return of the monies

---

1. Section 1983 grants a right of action against every person acting under color of law who deprives the person injured "of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Section 1985 grants a right of action to any person injured by a conspiracy to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws...."

2. Justice Pantano, New York State Supreme Court, Nassau County, on July 8, 1978, noting that a request for inspection of APNH II and issuance of C of O's had been made, directed North Hills and Massand to inspect APNH II.

deposited in response to the demand. *Acorn Ponds at North Hills v. The Incorporated Village of North Hills*, CV 81–1573, slip op. (E.D.N.Y. Feb. 10, 1983).

On September 29, 1978, Massand advised APNH that the distance between two buildings (designated on the site plan as buildings # 23 and # 24) was less than 20 feet because of overhangs and brick column protrusions and therefore in violation of the variance issued by the Zoning and Appeals Board on May 7, 1977. Massand filed a violation. The buildings were 90% to 95% completed at the time that APNH made application for a variance to the Board of Zoning and Appeals. It came on for a hearing on December 14, 1978. Sherman and Baker were members of the Board (consisting of five members). Sherman acted as its chairman.[3] The determination of the Board denying APNH's application was overturned in a decision by Justice Levitt dated April 10, 1979.

In April, 1979, AHC employed an engineering firm to inspect and report on APNH I and II. At this time, Sherman and Baker were trustees of the Board of Trustees of North Hills and members of the Board of Zoning and Appeals. The firm prepared a report, known as the Montemarano Report, which recommended certain repairs and improvements to APNH I and buildings in APNH II (for which no C of O had yet been issued). By letter dated September 13, 1979, APNH requested Massand to inspect APNH II in order to process the applications for C of O's. Massand refused. A Justice of the Supreme Court of Nassau County directed the inspection in an Article 78 proceeding by order dated November 23, 1979. Defendants appealed the judgment entered on the order to the Appellate Division of the Supreme Court, Second Department. Upon affirmance by the Appellate Division, on February 11, 1980, six months after the request was made, Massand inspected the buildings.

In September, 1979, North Hills and Massand refused to inspect any buildings in APNH III, and thus withheld C of O's, unless APNH performed the work suggested in the Montemarano Report. By order of a Justice of the Supreme Court, Nassau County, dated October 15, 1979, North Hills was directed to make the inspection.

DISCUSSION

The court is called upon to determine whether an issue of material fact is presented. The burden is upon the moving party to establish that there is no genuine issue of fact to be submitted to the trier of facts. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). "[A]ll ambiguities and inferences to be drawn from the underlying facts [should be resolved] in the light most favorable to the party opposing the motion." *United States v. One Tintoretto Painting*, 691 F.2d 603, 606 (2d Cir.1982).

SECTION 1983 CLAIM

Defendants argue that their actions do not constitute a violation of APNH's right to due process. They contend that (1) the right to C of O's is not a property interest protected by the Fourteenth Amendment (citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) ("To have a property interest in a benefit, a person … must have more than a unilateral expectation of it.") and (2) that the state court procedures afford an adequate remedy for APNH's claims and therefore its due process rights are not implicated (citing *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 328, 83 L.Ed.2d 265 (1984); and *Engblom v. Carey*, 677 F.2d 957 (2d Cir. 1982)). In further support of their argument, defendants also rely on *Chiplin Enterprises v. City of Lebanon*, 712 F.2d 1524, 1527 (1st Cir.1983) ("[C]laim that de-

---

**3.** The decision stated:

No certificates of occupancy shall be issued unless the distance between the buildings, measured from a point on one building to the directly opposite point on the other, including overhangs and projections, is 20 feet or greater.

nial of the permit was improperly motivated simply raises a matter of local concern, properly and fully reviewable in the state courts") and *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822 (1st Cir.), *cert. denied,* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982) (State law remedies provided the due process to a land developer who was denied building permit).

## PROPERTY INTEREST

■ The Court in *Roth* defined property interests protected by the due process clause of the Fourteenth Amendment as follows:

"Property interests ... are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.,* 408 U.S. at 577, 92 S.Ct. at 2709.

In rejecting the § 1983 claim in *Roth,* which was brought by a non-tenured professor whose contract was not renewed, the Court held that:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.

*Id.*

Thus, in *Chiplin Enterprises, supra,* and *Creative Environment, supra,* wherein landowners were denied approval for their respective proposed development and building plans by local boards, the First Circuit Court of Appeals held that the "unilateral expectation" of the issuance of a building permit was not a property interest protected by the Constitution.

APNH does not complain of error in the administrative application of the zoning laws, as defendants contend. APNH claims that it had received 41 building permits and that some of its buildings were completed, or nearly so, and others were substantially started—all in accordance with the building permits issued by North Hills. It, therefore, had more than a unilateral expectation that C of O's would be issued. It had every reason to rely on the representation implicit in issuing the building permits that C of O's would be granted if the buildings were constructed in accordance with the plans upon which the building permits were issued.

Accordingly, APNH had a property interest in the right to C of O's that was protected by the Constitution.

## DUE PROCESS

We inquire as to what process was due APNH. The Constitution requires that an opportunity to be heard be afforded "at a meaningful time and in a meaningful manner." *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). "[A] State must afford to all individuals a meaningful opportunity to be heard if it is to fulfill the promise of the Due Process Clause." *Id.,* 401 U.S. at 379, 91 S.Ct. at 787.

In *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Court held that an inmate's loss of property (a $23 hobby kit), through the negligence of a prison guard, was not actionable under § 1983 where the state tort claims procedures supplied the due process of law requirement under the Constitution. Four Justices joined the Court's opinion (by Justice Rehnquist). However, Justice Blackmun, in a concurring opinion (in which Justice White concurred) stated:

> I ... do not understand the Court to intimate that the sole content of the Due Process Clause is procedural regularity. I continue to believe that there are certain governmental actions that, even if undertaken with a full panoply of procedural protection, are, in and of themselves, antithetical to fundamental notions of due process.

Most importantly, I do not understand the Court to suggest that the provision of "postdeprivation remedies" ... within a state system would cure the unconstitutional nature of a state official's intentional act that deprives a person of property.

*Id.*, 451 U.S. at 545–46, 101 S.Ct. at 1918.

The Court, in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), pointed out the difference between a case, such as *Parratt, supra*, which involved "a tortious loss of ... property as a result of a random and unauthorized act by a state employee ... not a result of some established state procedure" and the facts before it where "it is the state system itself that destroys a complainant's property interest, by operation of law, whenever the Commission fails to convene a timely conference—whether the Commission's action is taken through negligence, maliciousness or otherwise." *Id.*, 455 U.S. at 435–36, 102 S.Ct. at 1158.

■ We review APNH's claim, under § 1983, in the light of these principles. APNH's claim goes beyond allegations of errors in the application of zoning laws and ordinances. It claims that Sherman and Baker, as owners of condominiums, used the power and authority of their positions, as members of the Zoning and Appeals Board and as trustees of North Hills, for their self interest and advantage and in disregard of their duties in the public interest;[4] that the abuses of power and arbitrariness of the decisions, withholding C of O's, violated APNH's right to due process, *see, e.g., Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926); that the delay in inspections requiring repeated recourse to the state courts resulted in orders that the inspections be made and a further delay in finally obtaining the C of O's; and that such post-deprivation procedures proved to

be untimely and inadequate. Since these claims, if proven, would constitute a violation of plaintiff's right to due process, they are, therefore, cognizable under § 1983.

■ The court finds that the evidence presented by APNH presents issues of material fact on its § 1983 claim to be determined by a jury.

## EQUAL PROTECTION CLAIM

■ APNH's claim of a violation of its right to "the equal protection of laws" under the Fourteenth Amendment is more difficult to support. That clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center, Inc.*, — U.S. —, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)); *see also National Union of Marine Cooks & Stewards v. Arnold*, 348 U.S. 37, 41, 75 S.Ct. 92, 94, 99 L.Ed. 46 (1954) (finding no Equal Protection violation "because no showing [had] been made that anyone comparably situated had been treated differently from petitioner").

In the case considered herein, we find no proof that any developer of condominium apartments in North Hills has been treated more favorably than APNH. We therefore dismiss so much of the claim that rests on the Equal Protection Clause of the Fourteenth Amendment.

## SECTION 1985 CLAIM

The reference to § 1985 in the complaint (¶ 1), relating to the jurisdictional basis of the action, adds little to the claim since state action is conceded. Further, APNH fails to state a claim under § 1985. *See United Brotherhood of Carpenters & Joiners of America v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) (citing with approval *Griffin v. Breckenridge*,

---

**4.** APNH claims that Sherman and Baker demanded that it furnish a self-propelled road sweeper for the streets of the project, an additional layer of asphalt, poolside furniture, lights for the tennis court, a security shack at the entrance to the property, extension to the clubhouse, and installation of a new ventilating system as a price for making an inspection in order to procure C of O's to which it was entitled.

694

403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)).

ORDER

Defendants' motion is granted to the extent of dismissing the equal protection claim, under § 1983, and the conspiracy claim, under § 1985(3). In all other respects, the motion is denied, and it is

SO ORDERED.