# United States Court of Appeals
## For the First Circuit

No. 01-1414

THOMAS J. MACONE AND FRANK BRAMANTE,
TRUSTEES OF BRAMAC DEVELOPMENT TRUST,

Plaintiffs, Appellants,

v.

TOWN OF WAKEFIELD,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert E. Keeton, U.S. District Judge]

Before

Torruella, Circuit Judge,

Cyr, Senior Circuit Judge,

and Lipez, Circuit Judge.

David J. Gallagher, with whom Regnante, Sterio & Osborne LLP, were
on brief, for appellants.
Patrick J. Costello, with whom Merrick, Louison & Costello, were
on brief, for appellee.

January 10, 2002

**TORRUELLA, Circuit Judge.** Plaintiffs-appellants Thomas J. Macone and Frank Bramante, Trustees of the BRAMAC Development Trust, appeal from a grant of summary judgment for appellee, the Town of Wakefield ("Wakefield"). Appellants brought suit against Wakefield alleging violations of the Federal Fair Housing Act, 42 U.S.C. § 3604, 42 U.S.C. § 1983, and the Due Process and Equal Protection clauses of the United States Constitution. These violations allegedly occurred when Wakefield rescinded its support for appellants' proposed affordable-housing project. Upon appellee's motion for summary judgment, the district court found no material facts in dispute and, thereafter, ruled in appellee's favor as a matter of law. We affirm.

## I.

This suit arose out of appellants' dealings with Wakefield when appellants sought, obtained, and, subsequently, lost local backing for a proposed residential housing development. As designed, the development, Hillside Estates, would consist of 133 to 160 condominiums, a significant percentage of which would be targeted to low-income and minority families. It would be located on a 12.3 acre parcel of land in Wakefield which the appellants already owned and which had already been approved for a 28-lot subdivision by the Wakefield Planning Board. Appellants hoped to move this project through the Local Initiative Program ("LIP"), allowing them to bypass many local zoning and regulatory hurdles.

The Commonwealth of Massachusetts Department of Housing and Community Development ("DHCD") established LIP in order to provide cities and towns in Massachusetts with incentives to initiate the construction and sale of minority and low-income family housing. In furtherance of that goal, LIP provides non-financial assistance and allows developers to obtain legal standing to appear before local Zoning Boards of Appeals and request comprehensive permits. These comprehensive permits potentially allow developers to circumvent local requirements and regulations, including zoning laws.

As a first step in the LIP application process, a developer must get the written endorsement of the chief elected official of the municipality where the project is proposed. In Wakefield, this is the Board of Selectmen ("Board"). The involvement and support of local elected officials is important because proposed LIP developments enjoy streamlined approval processes and participating municipalities may share in the marketing and design of projects. While genuine local support is important, DHCD expects local officials to act in good faith and not unreasonably withhold support.

Additionally, Massachusetts has established a target goal that ten percent of available housing stock in each community should be affordable.[1] See Mass. Gen. Laws ch. 40B, § 20. Wakefield has never

_____

[1] For the purposes of this opinion, affordable housing is defined as housing that low- and moderate-income families can afford.

-4-

achieved that target percentage.  Rather, the percentage of affordable housing in Wakefield hovers around 4.5 percent of the total available housing.

According to LIP regulations, appellants sought approval for Hillview Estates from the Board.  In their letter to the Board, appellants stated, " It is important to note that in communities where the percentage of available low to moderate income housing is below 10%, the DHCD expects local support for LIP Program proposed housing."

On May 13, 1998, the Board voted to approve the Hillview Estates project proposed by appellants.  Appellants suggest that the Board originally gave this approval because it wanted to maintain some control over the project, particularly over the type of residents.  According to appellants, the Board feared that the project would be built even without Wakefield's participation, in which case Wakefield would have no local preference and, thus, no control over who would fill the low-income and minority units.  They base that contention on the statement of one Board member who said, in regard to the Hillview Estates development, "I don't think that gives the flavor to what we want in Wakefield and unfortunately - and I understand how the neighbors down there probably feel, I'm not sure that's what they're going to want to see at the end either."  In response to this contention, all deposed Board members[2] explained that their initial

---

[2]  Appellants deposed all but one Board member.

approval stemmed from their concern that the town would suffer adverse consequences, including a possible loss of funding from the state, if they failed to approve all LIP proposals.

After the Board approved the Hillview Estates proposal, appellants submitted their application to DHCD. Pursuant to this application, appellants met with DHCD representatives on November 5, 1998. At that meeting, DHCD asked appellants to consider reducing the size of the Hillview Estates project and obtain additional confirmation of Wakefield's support for the project. Therefore, on November 9, 1998, appellants resubmitted the Hillview Estates proposal to the Board, reducing the number of units by twenty. Four days later, Wakefield responded that the Board was happy to see that the number of units had been reduced and that the Board continued to support the Hillview Estates project.

On November 30, 1998, members of the Board met with DHCD representatives to discuss LIP and related projects. At this meeting, it became clear to the Board that Wakefield would not suffer adverse consequences from the simple failure to approve all LIP proposals. The DHCD representatives made clear that they believed that the Board had been making a good faith effort to comply with program goals.

In a letter dated December 21, 1998, DHCD informed the Board that it had approved the Hillview Estates project. However, the letter also noted that "both the size of the proposed project and the density

per acre are greater than the size or density typically allowed by [DHCD] within the [LIP]. However since the [Board] has endorsed the Hillview Estates [project] application, [DHCD] grants certification." The letter also required that five of the affordable units be set aside for minority applicants.

On March 8, 1999, the Board voted to rescind their prior approval of the Hillview Estates project. This vote occurred without any prior notice to appellants. The next day, March 9, the Board notified DHCD of the rescission and asked whether the Hillview Estates project remained eligible to seek a comprehensive permit from the Zoning Board of Appeals. The Board did not notify appellants of the rescission until two days after the vote, March 10. On March 19, 1999, DHCD cancelled its prior certification and site approval letter for the Hillview Estates project, preventing appellants from obtaining a comprehensive permit.

## II.

We review the district court's grant of summary judgment de novo after drawing all reasonable conclusions of fact in favor of the appellants. See Rubinovitz v. Rogato, 60 F.3d 906 (1st Cir. 1995). Only if no genuine dispute of material fact exists will we affirm the grant of summary judgment. See Fed. R. Civ. P. 56. Appellants are "entitled to all inferences which are fairly supported by the evidence, but are not permitted to build their case on mere 'opprobrious

epithets' of malice . . . or the 'gossamer threads of whimsey, speculation and conjecture.'" Creative Env'ts, Inc. v. Estabrook, 680 F.2d 822, 830 (1st Cir. 1982) (citations omitted).

## III.

Two of appellants' claims are brought under the Federal Fair Housing Act, 42 U.S.C. §§ 3601-3631.  They allege that the Board, by rescinding its support for the Hillview Estates project, violated the Fair Housing Act.  To prove a violation of the Fair Housing Act, appellants can show either discriminatory intent or disparate impact. See Gamble v. City of Escondido, 104 F.3d 300, 304-05 (9th Cir. 1997). Appellants advance both theories here, so we address each in turn.

### A.

Appellants argue that the Board and Wakefield intended to eliminate thirty-four affordable and five minority-owned housing units when they rescinded their support for the Hillview Estates project.  In support of this argument, appellants point to several pieces of evidence.  First, at the original hearing granting approval, a Board member said, "I don't think that gives the flavor to what we want in Wakefield."  Second, appellants contend that the Board only approved the project in an effort to take advantage of local preference provisions of LIP.  These local preference provisions would supposedly limit the number of minorities accepted as residents of the Hillview Estates project.  Third, the revocation was admittedly a substantial departure from normal procedures.  This departure includes the unannounced reconsideration of the Hillview Estates proposal and the allegation that one Board member orchestrated the unprecedented

-9-

rescission.  Fourth, appellants declare that this same Board member notified the DHCD that he would file an appeal on behalf of local residents if appellants received a comprehensive permit.  Fifth is the related point that local officials allegedly assisted in local opposition to the Hillview Estates project.  Sixth, the Board failed to state any reasons for its decision at the time of rescission and later pointed to facts which were properly before the Zoning Board of Appeals.  Such reliance is allegedly questionable because the Board did not have the factual background to adequately assess the project and because the Zoning Board of Appeals was more than equipped to deal with those issues.  Finally, the Board knew that its decision would eliminate thirty-four affordable and five minority-owned housing units from being built in Wakefield.

None of the facts pointed to by appellants demonstrates any discriminatory intent, except for arguably the "flavor" comment.  Even if we grant appellants that this comment betrays a racial concern by one Board member, we still cannot find that this one comment supports appellants' contention that the earlier rescission was racially motivated.  First, this comment was made months earlier, during a hearing where the Board voted to support the Hillview Estates project.  Second, appellants can point to no other evidence which supports a finding of discriminatory intent on the part of the Board.

Appellants suggest that they have sufficient corroborating evidence of discriminatory intent, but we disagree. Most of the arguments raised by the appellants relate to the procedural abnormalities surrounding the Board's rescission.[3] While procedural abnormalities can provide a basis for finding discriminatory intent, see Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 267 (1977) ("Departures from the normal procedural sequence also might afford evidence that improper purposes are playing a role."), such abnormalities are only relevant within a larger scope. Id. Here, appellants can point only to the "flavor" comment, made months earlier, to create that larger context. Additionally, appellants would have us ignore a whole host of events which occurred between the original approval and the rescission. Most importantly, the Board learned a significant amount about LIP and the Board's responsibilities under it. This is an undisputed fact.

Appellants attempt to deal with the Board's increased knowledge by arguing that the additional information simply led the Board to realize that it could entirely eliminate the Hillview Estates project without penalty, not just limit its impact. This argument

_____

[3] Appellants point to the fact that the vote was not previously scheduled and appellants received no notice of the vote. However, appellants also raise several related points which we consider together. These include the facts that an individual Board member threatened to appeal any grant of a comprehensive permit, Board members allegedly assisted in local opposition to the Hillview Estates project, and the Board provided no reason for the rescission at the time.

hinges on appellants' assertion that the Board originally approved the project in order to take advantage of the local preference provisions of LIP,[4] as this would supposedly limit the number of minority families moving into Wakefield. However, there is no support in the record for this assertion. The record of the Board meeting shows quite clearly that the members were very concerned about the absolute level of development in the town. They were also afraid of losing control of the project entirely and allowing appellants to bypass the local planning process. Finally, the Board members expressed a clear interest in developing Wakefield so that residents could become "lifelong" residents, instead of being forced to leave at retirement, when their income might decrease. None of the comments by Board members reflects any racial concerns, just legitimate concerns about the amount and type of development.

The Board also received information regarding DHCD's expectations. They learned that the Hillview Estates project was larger and more dense than the typical projects approved under the LIP. In fact, DHCD was quite clear that it had significant reservations about the project and only granted its approval because of the Board's support for the project. Combining that knowledge with the fact that

---

[4] As represented in the record, the local preference provision allows a community to require that up to 70 percent of the low- and moderate-income units be granted preferentially to local residents or their relatives.

DHCD believed the Board and Wakefield to be working steadily toward providing the target percentage of affordable housing, the evidence would not support a finding that racial considerations drove the Board's rescission. Larger concerns about the Hillview Estates proposal predominated.

Finally, appellants argue that we should look to the Board's knowledge that its rescission would prevent affordable and minority-owned housing units from being built in Wakefield. While the Board may have prevented these few units from being constructed, the Board also knows that it must continue to make progress toward the ten-percent goal of affordable housing. Future projects may or may not include the local preference provision which was included in the Hillview Estates proposal. Therefore, the Board, if anything, faces a more uncertain future regarding the movement of minorities into Wakefield. If keeping minorities out of Wakefield were actually a concern for the Board, blocking the Hillview Estates project would hardly further that goal.

In this context, it is clear that the "flavor" comment does not get appellants past summary judgment. See Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 743-44 (1st Cir. 1995) ("While ambiguous remarks may, under some circumstances, help to illuminate the summary judgment record, such remarks rarely will suffice to conceive an issue of material fact when none otherwise exists."). We are not required to enter into the realm of fantasy and conjecture when

reviewing a grant of summary judgment, see id. at 735, and appellants cannot show discriminatory intent on such flimsy evidence. Therefore, the district court properly granted summary judgment on the discriminatory intent claim.

## B.

Another route to establishing a prima facie case of racial discrimination under the Fair Housing Act is to show that appellee's actions "actually or predictably [result] in racial discrimination." United States v. City of Black Jack, 508 F.2d 1179, 1184 (8th Cir. 1975). The important distinction here is that we look only at the effect of the Board's actions, not its motivation. See id. at 1185. Appellants argue that the Board's rescission of its support for the Hillview Estates project has a discriminatory impact. However, we find that appellants provide no evidence and can only speculate about any such impact. Therefore, we hold that they fail to establish a prima facie case of discriminatory impact.

We begin by noting that the Federal Fair Housing Act certainly imposes no affirmative obligation on municipalities to approve all proposed affordable or minority housing projects. See Vill. of Arlington Heights, 429 U.S. at 270-71 (holding that the simple failure of the village to rezone property, so that a low-income, racially diverse housing project could be built, did not violate the Fair Housing Act). At the same time, municipalities cannot frustrate

-14-

the underlying policy of providing fair housing within their communities. See Smith v. Town of Clarkton, 682 F.2d 1055, 1068 (4th Cir. 1982). Therefore, actions that have a discriminatory effect can violate the Fair Housing Act.

In trying to show a discriminatory effect, appellants rely heavily on City of Black Jack, but the case before us fails to present similar evidence. 508 F.2d at 1179. There, the record contained extensive information regarding the racial segregation of the immediate area. Id.; see also Kennedy Park Homes Ass'n v. City of Lackawanna, 436 F.2d 108, 113 (2d Cir. 1970) (relying on evidence of blatant segregation within the defendant city in affirming the judgment against the city). The court also found that this racial segregation was the result of "deliberate racial discrimination in the housing market." City of Black Jack, 508 F.2d at 1186. We have no such comparable information here.

Appellant would have us look exclusively to the fact that Wakefield is a predominately white community. However, they present no information regarding the surrounding area and certainly no information about historical patterns of racial housing discrimination in the Wakefield area. The fact that a community is not racially integrated does not automatically mean that we will find a violation of the Fair Housing Act. Arlington Heights had 27 black residents out of a total population of 64,000 when the village refused to rezone a parcel of

-15-

land to accommodate a proposed low-income housing development. Vill. of Arlington Heights, 429 U.S. at 255. Yet, the Supreme Court found no violation of the Fair Housing Act. Id.

Appellants also fail to address an even more salient distinction between their case and City of Black Jack. In City of Black Jack, plaintiffs presented "ample proof" of minority interest in the blocked development. 508 F.2d at 1179. Here, there is no information that any minorities would actually move into the Hillview Estates project. At best, appellants can point to the requirement that five of the affordable units be set aside for minority applicants. There is no assurance that any minority applicants would appear or that any would actually secure housing in Hillview Estates. In short, there is absolutely no proof that any minority would actually be denied housing in Wakefield due to the Board's rescission of its approval for the Hillview Estates project. Therefore, we find that appellants have failed to produce sufficient evidence to establish a prima facie case of discriminatory impact under the Fair Housing Act and that the district court properly granted summary judgment on this count.

**IV.**

Appellants also brought a variety of constitutional claims. First, they allege that the Board's actions deprived them of property without due process of law. Second, appellants allege that the Board's actions were arbitrary, capricious and confiscatory, violating their

-16-

substantive due process rights.  Finally, they allege that the Board's actions deprived them of equal protection of the laws.  All of these claims were brought under 42 U.S.C. § 1983.  We address these claims below and find that, for each, appellants fail to present sufficient evidence to survive a motion for summary judgment.

To bring a successful section 1983 action, appellants must establish two elements: (1) the conduct complained of was carried out under color of state law and (2) this conduct deprived appellants of rights, privileges or immunities secured by the Constitution or laws of the United States.  See Chiplin Enters. v. City of Lebanon, 712 F.2d 1524, 1526-27 (1st Cir. 1983).  There is no question that the first requirement is met here, so we proceed to the second element for each of appellants' claims.

**A.**

First, we address the due process concerns raised by appellants.  To establish a due process claim, substantive or procedural, appellants must first establish a property interest.  See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569-70 (1972).  They contend that because the Board issued three written indications of support for the Hillview Estates project, they had a property interest in the Board's support which triggers due process rights.  Appellants also point to the fact that the Board knew they had spent thousands of dollars in continuing to develop the Hillview Estates proposal.

-17-

However, the discretionary nature of the Board's act in rescinding its approval negates any entitlement claim asserted by appellants. See Bd. of Regents, 408 U.S. at 577 ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."). We have consistently rejected substantive due process claims arising out of disputes between developers and land planning authorities while leaving the door "slightly ajar" for "truly horrendous situations." Néstor Colón Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992).

Simply put, appellants cannot demonstrate a property interest in the Board's prior approval of the Hillview Estates project. The record contains nothing but evidence that local approval of LIP projects is entirely discretionary. Additionally, appellants had not even obtained the comprehensive permit which they sought. This simple fact distinguishes their case from that of Acorn Ponds at North Hills v. Inc. Vill. of North Hills, 623 F. Supp. 688 (E.D.N.Y. 1985), on which appellants rely. There, a district court distinguished the case where all permits had issued and construction was largely complete from the case where building permits had not been granted. Id. at 692. When a developer has actually constructed a structure with the appropriate permits, the court found that a property right may attach.

-18-

<u>Id</u>.  In contrast, here, there is simply no evidence that appellants would have obtained a comprehensive permit and been allowed to continue with their development, much less begun any construction.  Furthermore, any support from the Board and any money expended by appellants would have failed to move the project along had such a permit been denied. Therefore, appellants fall far short of showing any cognizable property interest.

On the substantive due process element, it is true that we have left the door open in truly horrendous situations.  <u>See</u> <u>Néstor Colón Medina</u>, 964 F.2d at 45.  However, this is not such a case.  As discussed above, there is no indication that the Board acted with any discriminatory intent.  In fact, the evidence shows only that the Board was legitimately concerned about the impact of this large development on Wakefield.

Because appellants fail to show any property interest and cannot demonstrate that the Board acted improperly in revoking its prior support, the district court properly granted summary judgment to the Board on the due process counts.

**B.**

Finally, we address appellants' equal protection claim. Here, we look for two elements: (1) whether the appellant was treated differently than others similarly situated, and (2) whether such a difference was based on an impermissible consideration, such as race.

See Rubinovitz, 60 F.3d at 909-10 (citing Yerardi's Moody St. Rest. & Lounge, Inc. v. Bd. of Selectmen, 878 F.2d 12, 21 (1st Cir. 1989)). Appellants allege that they were treated differently than other LIP developments based on the Board's desire to exclude minority residents from Wakefield.

On appeal, appellants argue exclusively that the district court erred when it found that appellants had not been treated differently than others similarly situated. In making this determination, the district court found that Hillview Estates was not similarly situated in comparison to other LIP developments in Wakefield due to its larger size. Appellants contend that such a finding by the district court simply allows the Board to continue denying larger projects, thereby furthering its allegedly discriminatory purpose. Simply put, this argument fails to get appellants anywhere. Regardless of whether the district court erred in holding that appellants were not similarly situated to other LIP developers, appellants fail to present any evidence to support their claim that the Board acted with discriminatory intent, as discussed above. Absent such a showing, appellants cannot make out either a due process or an equal protection claim. See Rubinovitz, 60 F.3d at 909-10.

Additionally, we note our extreme reluctance to entertain equal protection challenges to local planning decisions:

> Every appeal by a disappointed developer from an adverse ruling by a local Massachusetts planning board necessarily involves some claim that the board exceeded, abused, or "distorted" its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason. It is not enough simply to give these state law claims constitutional labels such as "due process" or "equal protection" in order to raise a substantial federal question under section 1983.

Creative Env'ts, Inc., 680 F.2d at 833; see also Néstor Colón Medina, 964 F.2d at 44-45 (citing Vill. of Belle Terre v. Boraas, 416 U.S. 1, 12 (1974) (Marshall, J., dissenting) ("If disgruntled permit applicants could create constitutional claims merely by alleging that they were treated differently from a similarly situated applicant, the correctness of virtually any state permit denial would become subject to litigation in federal court. Limiting such claims is essential to prevent federal courts from turning into 'zoning board[s] of appeals.'")). Appellants fail to raise a claim that persuades us to depart from this longstanding policy. This case does not concern a blanket ordinance or regulation ruling against a certain type of housing. Rather, it concerns an individualized decision about one project. Other LIP projects are currently going forward in Wakefield, and state officials have acknowledged the town's substantial efforts to increase the amount of affordable housing available. Finally, this case raises a matter of local concern and is fully reviewable under state law.

Therefore, we find that the district court properly granted summary judgment against appellants on their equal protection claim.

**V.**

For the foregoing reasons, we **affirm** the district court's judgment granting summary judgment in favor of defendant-appellee.