Barry v. Rollinsford, et al.          CV-02-147-M    10/06/03
                      UNITED STATES DISTRICT COURT

                        DISTRICT OF NEW HAMPSHIRE


Frederick J. Barry and
June M. Barry,
        Plaintiffs

        v.                                    Civil No. 02-147-M
                                              Opinion No. 2003 DNH 170
Town of Rollinsford;
Rollinsford Board of Selectmen;
Edmund F. Jansen, Jr.; Edgar
Ross; Albert Dionne; Rollinsford
Board of Adjustment; Joseph S.
Caouette; Myron O'Neill; Albert
England; Jerry H. Anderson; and
Raymond Winter,
        Defendants


                            **O R D E R**


        Plaintiffs, appearing pro se, have sued in four counts

seeking declaratory relief, injunctive relief, and monetary

damages based upon the Rollinsford Zoning Board of Adjustment's

decision not to grant a special exception that would allow them

to build an assisted living facility for handicapped elderly

persons.  Specifically, plaintiffs assert that: (1) the

Rollinsford Zoning Ordinance ("RZO") violates the Fair Housing

Act ("FHA"), 42 U.S.C. § 3601 et seq. (Count I); defendants

intentionally denied housing opportunities to the handicapped in

violation of the FHA (Count II); (3) defendants denied them due process and equal protection (Count III); and (4) defendants' actions violate the New Hampshire Constitution, N.H. Rᴇᴠ. Sᴛᴀᴛ. Aɴɴ. ("RSA") § 672:1, III-d, and RSA 674:33, IV. Before the court is defendants' motion for summary judgment. Plaintiffs object. For the reasons stated below, defendants' motion for summary judgment is granted.

**Summary Judgment Standard**

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fᴇᴅ. R. Cɪᴠ. P. 56(c). "To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trialworthy issue as to any material fact." Perez v. Volvo Car Corp., 247 F.3d 303, 310 (1st Cir. 2001) (citing Grant's Dairy-Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st Cir. 2000)).

> Not every factual dispute is sufficient to thwart
> summary judgment; the contested fact must be "material"
> and the dispute over it must be "genuine." In this

> regard, "material" means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant.  By like token, "genuine" means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.

Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001)

(quoting McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315

(1st Cir. 1995)).

In defending against a motion for summary judgment, "[t]he non-movant may not rely on allegations in its pleadings, but must set forth specific facts indicating a genuine issue for trial." Geffon v. Micrion Corp., 249 F.3d 29, 34 (1st Cir. 2001) (citing Lucia v.  Prospect St. High Income Portfolio, Inc., 36 F.3d 170, 174 (1st Cir. 1994)).  When ruling upon a party's motion for summary judgment, the court must "scrutinize the summary judgment record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'"  Navarro, 261 F.3d at 94 (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).

## Background

The relevant facts, presented in the light most favorable to plaintiffs, are as follows.

Plaintiffs sought approval from the Town of Rollinsford ("the Town") to build a twenty-unit assisted living facility for frail elderly persons in Rollinsford's urban residential ("UR") zoning district.[1] They characterized their project as "housing for the elderly," one of the fifteen residential uses listed in paragraph 6.9.A of the Rollinsford Zoning Ordinance ("RZO" or "the ordinance").[2] According to the ordinance, housing for the

---

[1] Plaintiffs already own the subject property, which is also the location of their residence.

[2] During an attempt to secure approval in 1997 for what appears to be the same project, plaintiffs characterized the project, on the "Application for Appeal" form submitted to the Rollinsford Zoning Board of Adjustment ("ZBA"), as "[p]rivate, non-profit supported residential care facility and community center to provide assisted living for very low income elderly." In the body of the 1997 application, plaintiffs characterized the project as either a "private non-profit community center building, adult education center or other similar facility" (one of fourteen institutional, recreational, and educational uses listed under paragraph 6.9.B of the RZO) or a "hospital, infirmary, nursing home, [or] convalescent home" (another one of the RZO institutional, recreational, or educational uses). Both of the cited uses require a special exception, for which plaintiffs applied. The ZBA granted plaintiffs' request for a special exception, subject to certain conditions. Plaintiffs

elderly is permitted as a special exception in the UR district, "only if the Board of Adjustment so determines and grants a special permit therefore as provided in Sections 7 through 10 subject to such restrictions as said board may establish."[3]  RZO, ¶6.2.  Section 8 of the RZO provides that "[h]ousing for the [e]lderly [m]ust conform to the special provisions for apartments under paragraph 8.1."  RZO, ¶8.3.1.  Paragraph 8.1 lists nine requirements that must be met by apartments, and multiple or attached dwellings.  RZO, ¶8.1.2.  Two have been at issue in this case, one requiring that "[t]he manner of sewage disposal shall be approved in advance in writing by the Health Officer," and another requiring that "[a]partments with 4 or more units must be connected to municipal sewer and water."  RZO ¶¶ 8.1.2(4) and (7).

_____

petitioned the New Hampshire Superior Court for a declaratory judgment, and that court granted in part and denied in part their request for relief, ruling, inter alia, that "the ZBA may condition its grant of a special exception on the plaintiffs' satisfaction of the independent survey condition."  Plaintiffs never met the conditions imposed by the ZBA.

[3] According to the table of uses in the RZO, housing for the elderly is permitted as of right in two zoning districts, permitted by special exception in four more districts, and excluded from three districts.

Plaintiffs applied for a special exception on July 2, 1999. Paragraph 11.3.2 of the RZO governs the granting of special exceptions:

> SPECIAL EXCEPTION APPEALS:  A Special Exception as specified in this Ordinance may be permitted only if the Board of Adjustment makes the following findings of fact:
>
> 1)   The proposed site is found to be an appropriate location for such a use by the Planning Board.
>
> 2)   The proposed use will not be detrimental to the public health, safety or welfare, and will not adversely affect property values or improvements in the adjacent area.
>
> 3)   Appropriate and adequate facilities will be provided for the proper operation of the proposed use.
>
> 4)   The proposed use will comply with the applicable regulations of the district in which it is to be located.

After a hearing that spanned three meetings (August 10, 1999, September 14, 1999, and October 19, 1999), the ZBA voted unanimously to deny plaintiffs' application for a special exception.  It is undisputed that plaintiffs submitted no professional studies discussing the impact of their project on traffic or property values, two concerns that were raised consistently during the public hearing process.  In the official

6

minutes of the October 19 ZBA meeting, the votes of the ZBA members, and the reasons for those votes, are recorded as follows:

> Mr. England - No, reason do not think he's conformed to the special provisions of 8.1, there is no proof of water and sewer, nor a letter from the Health Officer.

> Mr. Winter - No, reason believes he has not met items 2, 3, 4 of 11.3-2.

> Mr. Anderson – No, for the same reasons, we don't have what's needed for a project of this magnitude.

> Mr. O'Neill – No, does not feel he has met the requirements of 11.3-2, items 2, 3, and 4.

> Mr. Caouette - No, simply because of the burden of proof.

(Pl.'s Obj. to Summ. J., Ex. 13 at 8.)  On November 5, 1999, plaintiffs filed a motion for reconsideration, which was denied on November 18, 1999.  Also on November 5, plaintiffs filed a document with the ZBA titled "Request to Make a Reasonable Accommodation."  That request stated, in full:

> **Now Come** the Applicants, Frederick J. and June M. Barry, respectfully request this Board to make a reasonable accommodation under the Fair Housing Act, 42 U.S.C. § 3601 et seq., to allow the construction of an assisted living facility which they have proposed for the Town of Rollinsford, New Hampshire.

7

In the official minutes of the October 19 ZBA meeting, the votes of the ZBA members, and the reasons for their votes, are recorded as follows:  Perhaps tellingly, plaintiffs did not specify the precise accommodation they were seeking and, thus, did not explain how that accommodation was necessary to providing housing opportunities for handicapped elders.  On November 26, 1999, the ZBA declined to accept plaintiffs' request for a reasonable accommodation, on "the advice of the legal counsel of the Town of Rollinsford, New Hampshire that it is not within the jurisdiction of this Board."

Plaintiffs subsequently filed a housing discrimination complaint with the U.S. Department of Housing and Urban Development ("HUD").  HUD first attempted conciliation between the parties and then, when that was unsuccessful, referred plaintiffs' complaint to the Civil Rights Division of the U.S. Department of Justice ("DOJ"), because the complaint concerned zoning and land use.  In its letter of transmittal, HUD stated:

> In late summer 1999, the Complainants requested a reasonable accommodation from the ZBA for special exception requirements pertaining to issuance of a

building permit for their assisted living facility. The ZBA refused their request for a reasonable accommodation in November 1999 and as a result of the adverse decision June and Frederick Barry filed a handicap discrimination complaint with the New England HUD office in April 2000, alleging discrimination against the handicapped and interference with the rights of persons protected by the Fair Housing Act. At issue was the granting of a reasonable accommodation necessary to afford people living in an assisted living environment the equal opportunity to use and enjoy a dwelling, exempt from several town ordinances. The relief would exempt the assisted living development from connecting to the existing town sewer service system and local site plan review.

After receiving the Respondent's answer to the complaint, the HUD investigator requested background information on the Town hearings and State court decisions. The investigator held on site meetings with the parties and collected pertinent evidence in November 2000.

The investigator worked with the parties throughout December and January in an attempt to resolve this matter. During the two months of settlement discussions, several major issues were resolved but others remained. The Town agreed to grant an accommodation to the developer and not require connection to the Town sewer system as long as the project received approval from the State of New Hampshire for a septic system. The Town also agreed to waive the required site plan review process for the development.

When, it appeared that an agreement resolving this matter was imminent, the parties reached an impasse on two major issues. The Town maintained that the Zoning Ordinance requires Complainant Barry to sub-divide his property creating one parcel for his residence which remains taxable, and a second parcel for the non-profit, 20-unit assisted living facility. Complainant

9

> Barry refused to agree to sub-divide their land, but agreed, at the end of negotiations, to continue to pay taxes on the residential home. The Town refused that proposal, maintaining that the land unless sub-divided cannot have two "uses" on the same parcel. The Town also maintained that there should be a limited ZBA review of the plans, funding of the project and the proposed parking scheme, all of which were rejected by the Complainants. On or about January 23, 2001, conciliation failed.[4]

(Pl.'s Obj. to Summ. J., Ex. 23 at 1-2.) By letter dated June 4, 2001, the DOJ Civil Rights Division determined that no further action was called for on its part, and informed plaintiffs of their right to sue. This suit followed.

---

[4] In an affidavit accompanying plaintiffs' objection to summary judgment, Mr. Barry describes the failure of conciliation slightly differently:

> After several months collecting pertinent evidence and working with the Town Attorney and the Board of Selectmen in an attempt to resolve the matter, the Town agreed to grant an accommodation by not requiring a connection to [the] town sewer and water system, [and] to waive the site plan review process, if I would agree to continue to pay property taxes on my home. When I agreed to this, the selectmen added another stipulation: the property must be subdivided since the property cannot have two "uses", and I must submit to another limited ZBA review of the plans, funding of the project, and the proposed parking scheme. I rejected these stipulations, and the selectmen withdrew their offer of settlement.

(Pl.'s Obj. to Summ. J, Ex. 1 at 15-16.)

10

In Count I, plaintiffs assert that paragraphs 8.1.2, 8.3, and 11.3.2 of the RZO are invalid, either facially or as applied, because those provisions were intended, or have been applied, to "make dwellings in a residential zone unavailable to persons with a handicap." In Count II, plaintiffs assert that defendants intentionally denied housing opportunities to persons based upon handicap and interfered with those who encouraged others to exercise their rights under the Fair Housing Act by: (1) refusing to grant a reasonable accommodation in "the application of the zoning regulations and in the requirement of municipal sewer and water;" (2) acting in concert to thwart plaintiffs' attempts to secure municipal approvals; and (3) collusively and deliberately attempting to prevent the development of plaintiffs' assisted living facility. In Count III, plaintiffs assert violations of the due process and equal protection clauses of both the federal and state constitutions. In Count IV, plaintiffs assert violations of Part. 1, articles 2 and 12 of the New Hampshire Constitution, RSA 672:1, III-d, and RSA 674:33, IV.

**Discussion**

Defendants move for summary judgment, arguing that on the undisputed factual record, they are entitled to judgment as a matter of law on Counts I and II, and the federal constitutional claims in Count III.  They further contend that the court should decline to exercise jurisdiction over the statutory and constitutional state-law claims asserted in Counts III and IV.  Plaintiffs identify no factual dispute precluding summary judgment.  Rather, they argue the merits of their disparate treatment, disparate impact, and reasonable accommodation claims under the FHA.[5]

I.   Count I: Disparate Treatment & Disparate Effect

        As noted, plaintiffs assert that paragraphs 8.1.2, 8.3, and 11.3.2 of the RZO are invalid, either facially or as applied, because those provisions were intended, or have been applied, to "make dwellings in a residential zone unavailable to persons with a handicap."  Defendants argue that they are entitled to summary

_____

[5] Citing chronic health problems, plaintiffs acknowledge their failure to address their remaining federal and state claims, and ask for either denial of defendants' motion for summary judgment or more time to brief those remaining issues.

judgment on Count I because the undisputed factual record fails to establish either disparate treatment (intentional discrimination) or disparate impact (discriminatory effect).

As a preliminary matter, plaintiffs have not indicated with any clarity which aspects of paragraphs 8.1.2, 8.3, and 11.3.2 they are challenging, or precisely how the ordinance violates the FHA. Paragraph 11.3.2 sets out the findings of fact that must be made by the ZBA before it may grant a special exception. Paragraph 8.3 requires that housing for the elderly must meet the special provisions applicable to apartments. And paragraph 8.1.2 sets out the special provisions applicable to apartments, which include the municipal sewer and water requirement. Plaintiffs devote a considerable portion of their brief to their argument, raised with vigor before the ZBA, that assisted living facilities such as the one they propose to build are not similar to apartment buildings, and should not be held to the legal requirement for apartments. Thus, plaintiffs appear to assert an FHA violation based upon application of the apartment provisions to their proposal.

"To prove a violation of the Fair Housing Act, [plaintiffs] can show either discriminatory intent or disparate impact." Macone v. Town of Wakefield, 277 F.3d 1, 5 (1st Cir. 2002) (citing Gamble v. City of Escondido, 104 F.3d 300, 304-05 (9th Cir. 1997)). Discriminatory intent (or disparate treatment), in turn, may be expressed on the face of a regulation or in its application, and requires "[p]roof of discriminatory motive." Gamble, 104 F.3d at 305 (quoting Familystyle of St. Paul, Inc. v. City of St. Paul, 728 F. Supp. 1396, 1401 (D. Minn. 1990)). To establish disparate impact, plaintiffs must "show that [defendants'] actions 'actually or predictably [result[ed]] in . . . discrimination.'" Macone, 277 F.3d at 7 (quoting United States v. City of Black Jack, 508 F.2d 1179, 1184 (8th Cir. 1974)).

None of the regulations cited by plaintiffs are facially discriminatory because none of them expressly limit the housing opportunities available to handicapped elderly persons. Plaintiffs have also failed produce sufficient evidence to go forward on their claim that discriminatory intent motivated defendants' application of the challenged zoning ordinances.

14

While plaintiffs have produced evidence of public opposition to their proposal, and certain concerns raised by the ZBA regarding it, there is nothing in that opposition that rises even to the level of the "flavor" comment found insufficient to establish discriminatory intent in Macone.  See 277 F.3d at 6.  Nor does the record disclose any sort of procedural abnormality that might give rise to an inference of discriminatory intent.  See id. at 6 (citing Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 267 (1977) ("Departures from the normal procedural sequence also might afford evidence that improper purposes are playing a role.")).  Rather than betraying any sort of animus toward the handicapped, the record of the ZBA's consideration of plaintiffs' special exception application demonstrates the ZBA's appropriate concern about a proposed residential facility with twenty units, each with its own bathroom.  In short, were plaintiffs to prove each and every statement attributed to defendants, they would, as a matter of law, fall far short of pointing to evidence from which a reasonable finder of fact might find a discriminatory motive.

Plaintiffs have failed, as well, to make a showing sufficient to avoid summary judgment on their disparate impact claim. Application of the apartment provisions to elderly housing does not predictably lead to housing discrimination against the handicapped elderly in the same way that an outright prohibition against new low-income housing was found to lead predictably to racial discrimination in City of Black Jack. The question here is not whether these plaintiffs can or cannot construct the particular elderly housing facility they have proposed, while still complying with the RZO apartment provisions, but rather, whether imposition of the apartment provisions would preclude anyone from building housing for the handicapped elderly. See Smith & Lee Assocs., Inc. v. City of Taylor, 13 F.3d 920 931 (6th Cir. 1993) (explaining, in context of reasonable accommodation analysis, that "the inquiry should not be whether a particular profit-making company needs such an accommodation but, rather, do such businesses as a whole need this accommodation"). Here, plaintiffs have not shown that RZO paragraph 8.3.1 would preclude development of housing for the frail elderly in the zone, as opposed to other housing, but only that they do not wish to comply with the health-related and other

16

requirements applicable to anyone seeking to build such a project. Accordingly, their disparate impact claim fails.

Finally, even if there was some merit to plaintiffs' disparate treatment or disparate impact claims, plaintiffs themselves acknowledge that:

> the Town agreed to grant an accommodation by not requiring a connection to town sewer and water, to waive the site plan review process, if [they] would agree to continue to pay property taxes on [their] home[, subdivide the property, and] submit to another limited ZBA review of the plans, funding of the project, and the proposed parking scheme.

(Pl.'s Obj. to Summ. J., Ex. 1 at 15.) In other words, the Town provided plaintiffs with a clear way around the very requirements they have challenged as discriminatory. Absent a ruling that sub-division of the property or limited ZBA review would violate the FHA, and plaintiffs make no such argument, the Town's concession on RZO paragraphs 8.3 and 8.1.2 would seem to moot plaintiffs' claims that those provisions violate the FHA, or that the town was motivated by a discriminatory animus.

17

II. Count II: Reasonable Accommodation

Defendants argue that they are entitled to judgment as a matter of law on Count II, plaintiffs' reasonable accommodation claim, because they did, in fact, grant the accommodation plaintiffs sought when they agreed to waive the municipal sewer and water requirement, so long as plaintiffs received state approval for their septic system (an obvious and serious public health issue). Plaintiffs counter that they were not given a reasonable accommodation because they were never granted a special exception.[6] As a logical matter, and based upon the results of the HUD conciliation process, plaintiffs appear to claim that they are entitled to a reasonable accommodation that consists of waiver of: (1) the municipal sewer and water requirement; (2) the RZO requirement that they sub-divide their

---

[6] While there is no need to dwell on this point, plaintiffs have consistently misapprehended the nature of "reasonable accommodations." In their initial request for one, they described the reasonable accommodation they sought as granting a special exception. However, a reasonable accommodation is not "a blanket waiver of all facially neutral zoning policies and rules." Oxford House, Inc. v. City of Virginia Beach, 825 F. Supp. 1251, 1261 (E.D. Va. 1993). Rather, a reasonable accommodation is a particular "change, waive[r], or . . . exception[] in [a municipality's] zoning rules." Trovato v. City of Manchester, 992 F. Supp. 493, 497 (D.N.H. 1997) (quoting Hovsons, Inc. v. Township of Brick, 89 F.3d 1096, 1103) (3d Cir. 1996)).

18

property into separate parcels for separate uses if they expect to maintain their residence on the same property the project will occupy; and (3) the ZBA's requirement of limited review of the project's plans, funding, and parking scheme.[7]  Because the Town offered to grant the first of those three waivers, it remains only to determine whether the second and third would qualify as "reasonable accommodations."

A reasonable accommodation in this context consists of an alteration, waiver, or exception to a local zoning rule that is "necessary to afford a person with a handicap 'equal opportunity to use and enjoy a dwelling.'"  Trovato v. City of Manchester, 992 F. Supp. 493, 497 (D.N.H. 1997) (quoting 42 U.S.C.A. § 3604(f)(3)(B)).  An accommodation is necessary when, "but for the accommodation, [individuals protected by the FHA] likely will be denied an equal opportunity to enjoy the housing of their choice."  Smith & Lee Assocs. v. City of Taylor, 102 F.3d 781, 795 (6th Cir. 1996) (citing Bronk v. Ineichen, 54 F.3d 425, 429 (7th Cir. 1995)).  "[A]n accommodation is reasonable unless it

---

[7] The ZBA's "limited review" appears designed to collect enough information to make the findings of fact necessary to support granting a special exception, under RZO paragraph 11.3.2.

requires "a fundamental alteration in the nature of a program" or imposes "undue financial and administrative burdens.'" Smith & Lee, 102 F.3d at 795 (quoting Southeastern Cmty. Coll. v. Davis, 442 U.S. 397, 410, 412 (1979)). Finally, "the burden of proving that a proposed accommodation is not reasonable rests with the defendant." Hovsons, Inc. v. Township of Brick, 89 F.3d 1096, 1103 (3d Cir. 1996) (citations omitted).

Neither of the two waivers plaintiffs appear to seek (waiver of the RZO sub-division requirement and the ZBA's limited review requirement) are reasonable accommodations, because neither is necessary, within the meaning of the FHA reasonable accommodation mandate. It is difficult to see how enforcement of the RZO sub-division requirement could possibly "den[y] people with disabilities access to housing on par with that of those who are not disabled." Hovsons, 89 F.3d at 1104. In other words, plaintiffs' reluctance to sub-divide their property falls far short of establishing that assisted living facilities, in general, cannot be built in Rollinsford without a modification of the RZO sub-division requirement. See Smith & Lee, 13 F.3d at 931 ("the inquiry should not be whether a particular profit-

making company needs such an accommodation but, rather, do such businesses as a whole need this accommodation"). Similarly, plaintiffs' disinclination to provide information to the ZBA does not establish that, as a general matter, limited review by the ZBA effectively forecloses the construction of assisted living facilities in Rollinsford. On that basis, the second waiver plaintiffs seek is also not necessary within the meaning of the FHA.

The undisputed factual record fails to demonstrate that the waivers plaintiffs seek are necessary for the establishment of assisted living facilities in Rollinsford. Thus, as a matter of law, the accommodations plaintiffs seek cannot be deemed "reasonable." Consequently, defendants' refusal to grant those waivers does not run afoul of the FHA's reasonable accommodation mandate.

III. <u>Count III, Federal Constitutional Claims</u>

Defendants argue that they are entitled to summary judgment on plaintiffs' federal due process and equal protection claims on

21

a variety of legal grounds.  Plaintiffs do not address their constitutional claims in their objection to summary judgment.

"To establish a due process claim, substantive or procedural, [plaintiffs] must first establish a property interest."  Macone, 277 F.3d at 9 (citing Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569-70 (1972)).  Here, as in Macone, plaintiffs did not have a constitutionally protected property interest, because they did not have "a legitimate claim of entitlement" to a special exception, due to the discretionary nature of special exceptions under the RZO.  277 F.3d at 9 (quoting Bd. of Regents, 408 U.S. at 577).  Accordingly, defendants are entitled to judgment as a matter of law on plaintiffs' federal due process claim.

To establish an equal protection claim, plaintiffs must prove that they were "treated differently than others similarly situated . . . based on an impermissible consideration."  Macone, 277 F.3d at 10 (citing Rubinovitz v. Rogato, 60 F.3d 906, 909-10 (1st Cir,. 1995)).  Here, plaintiffs' complaint asserts, in conclusory fashion, that they have been treated differently than

22

other similarly situated persons, but they have pointed to no evidence giving rise to a triable issue of differential treatment. And, as discussed above, plaintiffs have produced no evidence suggestive of discriminatory intent, which is essential to an equal protection claim. See Macone, 277 F.3d at 10 (citation omitted). Accordingly, defendants are entitled to judgment as a matter of law on plaintiffs' federal constitutional claims.

IV. Counts III & IV, State Claims

Because all of plaintiffs' federal claims have been dismissed, and in light of both this case's previous history in state court and the appropriate reluctance of federal courts to adjudicate local zoning matters, see, e.g., Macone, 277 F.3d at 9-10, the court declines to exercise supplemental jurisdiction over the remaining state-law claims asserted by plaintiffs. See Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).

**Conclusion**

For the reasons given, defendant's motion for summary judgment (document no. 15) is granted as to Counts I, II, and the

federal claims asserted in Count III.  Supplemental jurisdiction over the state-law claims asserted in Counts III and IV is declined.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

       **SO ORDERED.**

                                        _____
                                        Steven J. McAuliffe
                                        United States District Judge

October 6, 2003

cc:   Frederick J. Barry
      June M. Barry
      Donald E. Gardner, Esq.