William NEITHAMER, Plaintiff,

v.

BRENNEMAN PROPERTY
SERVICES, INC., et
al., Defendants.

No. Civ.A. 98–1969(GK).

United States District Court,
District of Columbia.

Dec. 17, 1999.

Benjamin S. Boyd, Piper & Marbury, L.L.P., Washington, DC, John P. Relman, Washington Lawyer's Committee for Civil Rights and Urban Affairs, Washington, DC, for plaintiff.

Charles Stephen Rand, Allen Wright, McKernan & Rand, Rockville, MD, Donald Melvin Temple, Temple Law Office, Washington, DC, for defendants.

## MEMORANDUM OPINION

KESSLER, District Judge.

Plaintiff William Neithamer, who is gay and HIV positive, brings this action against Brenneman Property Services, Inc. and several of its agents under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, and the D.C. Human Rights Act ("DCHRA"), D.C.Code § 1–2515. Plaintiff alleges that Defendants discriminated against him when he applied for housing because of his sexual orientation and his medical disability. This matter comes before the Court on Defendants' Motion for Summary Judgment and Plaintiff's Motion to Strike. Upon consideration of the pleadings and the entire record herein, for the reasons stated below, Defendants' Motion for Summary Judgment [# 49] is **denied,** and Plaintiff's Motion to Strike [# 51] is **denied.**

## I.—Background[1]

In September 1997, in his search for new rental housing, Plaintiff contacted De-fendant Brenneman Property Services, Inc. ("Brenneman Property") in response to an advertisement for a townhouse on the Northwest side of the District of Columbia. Plaintiff viewed the property, and upon finding it to his liking, filed an application with Brenneman Property for rental of the property.

Plaintiff provided Defendant Padraig A. Wholihan, the agent of Brenneman Property who handled the transaction, with bank statements and credit references in addition to the application. He also informed Wholihan that his credit report would show that he failed to make payments to some of his creditors a few years earlier. He explained that the reason for this was that several years ago, he had devoted his financial resources to paying the medical bills of his lover, who died in 1994 of AIDS. Plaintiff assured Wholihan that since 1994, he had maintained good credit, and that the bank statements and credit references would confirm this.

After Wholihan presented Plaintiff's application to Alida Stephens, the owner of the property, Stephens rejected Plaintiff's application. Upon being informed of this, Plaintiff offered to pay a second month's rent as additional security to rent the property. Wholihan informed Plaintiff that Stephens had rejected this offer too. Plaintiff was then able to obtain a co-signor for the lease, Reverend Louise Lusignan, who completed a co-signor form on Plaintiff's behalf. Wholihan, however, did not run a credit report on Reverend Lusignan's application. Wholihan Dep. at 155–56. Stephens also rejected Plaintiff's offer of a co-signor. At that point, Plaintiff made his final offer to pre-pay one year's rent. Wholihan informed Plaintiff that Mrs. Stephens had rejected this offer as well.

---

1. Pursuant to Local Civil Rule 7.1(h), "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is con-troverted in the statement of genuine issues filed in opposition to the motion." Unless otherwise noted, the Court states only uncon-troverted facts.

Upon learning of the rejection of his final offer, Plaintiff called Brenneman Property to inquire why his offer was rejected, and spoke with Defendant George Brenneman, the owner of Brenneman Property, as well as Wholihan. When Plaintiff stated he felt he was a victim of discrimination, Plaintiff alleges that Brenneman became angry and shouted, "if you try to sue me, I have a pack of bloodsucking lawyers who will place countersuits against you for libel and drive you into the ground." Neithamer Dep. at 67–68. Wholihan's recollection of the conversation was that Brenneman did say he had a "bulldog of an attorney", and that he may countersue. Wholihan Dep. at 240.

## II. Standard of Review

Under Fed.R.Civ.P. 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the movant has met this burden, a court must consider all factual inferences in the light most favorable to the non-moving party. *McKinney v. Dole*, 765 F.2d 1129, 1135 (D.C.Cir.1985). Once the moving party makes its initial showing, however, the nonmoving party must demonstrate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *McKinney*, 765 F.2d at 1135.

## III. Analysis

Defendants bring their Motion for Summary Judgment, arguing that there is no basis in fact for either of Plaintiff's claims: discrimination under the FHA and the DCHRA, and intimidation and coercion under those same statutes. Plaintiff brings his Motion to Strike, arguing that Defendants' Motion should be struck as untimely and premature.

### A. Plaintiff's Motion to Strike

Plaintiff argues that because Defendants' Motion for Summary Judgment was filed one day after the deadline for filing dispositive motions, and because there are critical issues of material fact in dispute precluding summary judgment, Defendants' Motion should be struck. Defendants argue that the untimeliness of their motion is insignificant and not prejudicial, and was due to inadvertence arising from several changes in the deadlines. Defendants also argue that Plaintiff's motion should be denied because those arguments could have been raised in the opposition to Defendants' motion, rather than burdening the Court with an additional motion to decide, and because Plaintiff is not entitled to a "preliminary ruling" on Defendants' motion, to save him the time of filing a full opposition. Because Defendants' reasons are persuasive, Plaintiff's Motion to Strike is **denied.**

### B. Discrimination in violation of FHA and DCHRA

Although the D.C. Circuit Court of Appeals has not yet addressed the issue, a number of other Circuit Courts have already ruled that when a plaintiff offers no direct evidence of discrimination, his claim of discrimination under the FHA is to be examined under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), established in Title VII cases.[2] *Gamble v. City of Escondido,*

---

**2.** Actions under the DCHRA similarly follow the *McDonnell Douglas* framework. *See, e.g.,* *United Mine Workers of Am., Int'l Union v. Moore,* 717 A.2d 332, 338 (D.C.1998).

104 F.3d 300, 305 (9th Cir.1997); *Mountain Side Mobile Estates Partnership v. Secretary of Hous. and Urban Dev.*, 56 F.3d 1243, 1250–51 (10th Cir.1995); *Cabrera v. Jakabovitz*, 24 F.3d 372, 382 (2d Cir.1994), *cert. denied*, 513 U.S. 876, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994); *Casa Marie, Inc. v. Superior Court of Puerto Rico for Dist. of Arecibo*, 988 F.2d 252, 270 (1st Cir.1993); *Secretary, U.S. Dep't of Hous. and Urban Dev., on Behalf of Herron v. Blackwell*, 908 F.2d 864, 870 (11th Cir.1990); *Hamilton v. Svatik*, 779 F.2d 383, 387 (7th Cir.1985); *Williams v. Matthews Co.*, 499 F.2d 819, 827 (8th Cir.1974), *cert. denied*, 419 U.S. 1021, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974). Given the agreement between the Circuits, this Court adopts their reasoning here.

Under this framework, Plaintiff must establish a prima facie case of discrimination by showing: (1) that he is a member of a protected class and Defendants knew or suspected that he was; (2) that he applied for and was qualified to rent the property in question; (3) that Defendants rejected his application; and (4) that the property remained available thereafter. *Blackwell*, 908 F.2d at 870. Plaintiff must provide sufficient evidence to show that he was "rejected under circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Hayman v. National Academy of Sciences*, 23 F.3d 535, 537 (D.C.Cir.1994). Once Plaintiff establishes a prima facie case, the burden shifts to Defendants to articulate some legitimate, nondiscriminatory reason for their rejection of Plaintiff's application. *Id.* If Defendants satisfy this burden, Plaintiff must show either that Defendants' reasons are pretext, *id.*, or that material facts are disputed, precluding summary judgment. *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1290 (D.C.Cir.1998).

Of the four elements of a prima facie case, the last two are undisputed in this case (that Defendants rejected Plaintiff's application, and that the property remained available thereafter). Whether Plaintiff has established the first two elements, however, is very much in dispute.

As to the first element, it is clear that Plaintiff has established a prima facie case as to his sexual orientation. Plaintiff is gay, and Defendants knew or suspected that he was. Neithamer Decl. at ¶ 2; Brenneman Dep. at 136. Although the DCHRA prohibits discrimination based on sexual orientation, the FHA does not. Thus, in order to make a prima facie case under the FHA, Plaintiff must also establish that he is disabled, as that word is used in the FHA, and that Defendants knew or suspected he was.

It is undisputed that Plaintiff is HIV positive, Neithamer Decl. at ¶ 2, and that being HIV positive constitutes a handicap under the FHA. *See, e.g., Hogar Agua y Vida en el Desierto, Inc. v. Suarez–Medina*, 36 F.3d 177, 179 (1st Cir.1994). Plaintiff alleges that he is handicapped within the meaning of § 3602(h)(3) of the FHA, that is, Defendants regarded or perceived him as being handicapped, while Defendants deny that they ever knew or suspected that Plaintiff was HIV positive. The question is whether Plaintiff has provided enough evidence to give rise to an inference that Defendants perceived he was HIV positive.

Plaintiff provides the following evidence in support of this inference. Plaintiff told Wholihan that his lover had died of AIDS; because of the pernicious stereotyping surrounding those infected with AIDS, Defendants likely suspected that Plaintiff had had sexual relations with his lover, and thus became exposed to the AIDS virus; there is no other explanation for the way that Plaintiff was treated by Defendants, especially given their failure to make exceptions to their rules for him, which they had done for others, and their failure to relay to the owner of the property all of Plaintiff's counteroffers. Plaintiff argues that these facts are sufficient to state a prima facie case that Defendants suspect-

ed he had AIDS. Plaintiff also argues that Defendants' denial of any such suspicions makes this issue a question for the jury, because it involves critical questions of credibility, and cannot be decided as a matter of law.

There are no cases which address the question of the plaintiff's burden of proving a prima facie case of perceived disability in a housing discrimination case.[3] There are, however, two cases which address the question of whether the plaintiff can establish a prima facie case when the defendant denies knowledge of the plaintiff's protected-class status. In both *Sanders v. Dorris*, 873 F.2d 938, 942 (6th Cir. 1989), and *Bullen v. Thanasouras*, 1994 WL 6868, *3–*4 (N.D.Ill.1994), the defendants denied knowing that the plaintiffs were black, and thus argued that plaintiffs had failed to establish a prima facie case of racial discrimination. Both cases found, however, considering all the facts in the light most favorable to the plaintiffs, that the defendants must have suspected that plaintiffs were black, because the defendants were presented with sufficient "clues" to have supported such suspicions, especially in light of their subsequent behavior towards the plaintiffs.

That reasoning is especially compelling here. First, HIV status is not easily identifiable as race usually is. Second, dismissing a case at the summary judgment stage because a plaintiff cannot prove a defendant's suspicions would subject HIV-positive individuals to the very discrimination that Congress sought to prevent, by denying them a remedy even when such discrimination existed. The very fact that this case is brought under the *perceived* disability section of the FHA informs how the question of the plaintiff's burden of proof at the prima facie stage must be approached. Given the difficulty of identi-

fying a person's HIV status, rarely will another's perceptions of that status be obvious. Even if someone had suspicions of another's HIV status, such perceptions could easily be denied. Therefore, requiring a plaintiff to show definitive proof of a defendant's perceptions at the summary judgment stage creates an impossible burden of proof, one that is inappropriate at the prima facie stage. It is sufficient for a plaintiff to demonstrate that there is a material dispute as to the defendant's perception of him as an individual with HIV or AIDS. Defendant's credibility regarding denials of such perceptions is for the jury to decide.

Considering all the facts in this case most favorably to the Plaintiff, the non-moving party, there are enough "clues" to allow a reasonable jury to conclude that Defendants suspected that Plaintiff was infected with HIV or AIDS: Plaintiff immediately informed Defendants that his lover had died of AIDS. It is no leap of logic to assume that he had had sexual relations with this lover, and was probably exposed to the AIDS virus. Whether Defendants actually made assumptions and had suspicions based on these clues is, however, a material disputed fact, which Plaintiff will have to prove at trial by a preponderance of the evidence.

■ The second element of a prima facie case, that Plaintiff applied for and was qualified for the property in question, is hotly disputed. Defendants argue that Plaintiff's dismal credit record clearly shows that he was not qualified to rent the property.

It is undisputed that at the time he applied for the apartment in question, Plaintiff's credit report was, indeed, dismal. If his credit report were the only factor Defendants had to evaluate, it would

---

**3.** There is some caselaw on prima facie cases of perceived disability in the employment context under the Americans with Disabilities Act; however none of those cases is helpful or applicable here. *See, e.g., Hill v. Hamilton County Public Hosp.*, 1999 WL 1029540 (N.D.Iowa 1999) (perceived disability with respect to drug use); *Nielsen v. Moroni Feed Co.*, 34 F.Supp.2d 1315 (D.Utah 1997), *aff'd* 162 F.3d 604 (10th Cir.1998) (same); *Pouncy v. Vulcan Materials Co.*, 920 F.Supp. 1566 (N.D.Ala.1996) (perceived mental disability).

be simple to conclude that Plaintiff was unqualified for the rental. That is not, however, all the information Defendants had at their disposal regarding his application. Specifically, Defendants also knew that Plaintiff's bad credit history was due to a one-time medical catastrophe; that he had significant assets in his bank accounts; that he had credit references and a co-signor; and that he offered to prepay one year's rent on the property. Looking at the record as a whole, Plaintiff has established that he was qualified to rent the property, and thus he has established a prima facie case of discrimination.

■ Defendants have proffered the following nondiscriminatory reasons for rejecting Plaintiff's application: (1) Plaintiff's credit was so extremely poor that any reasonable real estate agent examining his application would have likewise rejected it; and (2) the decisions to reject Plaintiff's application and subsequent offers were all made by Stephens,[4] for whom Defendants were merely acting as agents.

Plaintiff has provided more than sufficient evidence to call into question Defendants' proffered reasons. Plaintiff has provided evidence indicating that Defendants did not consistently follow their own policy regarding rejecting applicants with poor credit. *See, e.g.,* Pl.'s Exs. 14–69. Additionally, Plaintiff has provided evidence that Defendants did not present Stephens with all of Plaintiff's offers, or all the relevant information about those offers. *See, e.g.,* Stephens Dep. at 60, 62–65, 71–73, 102, 108. It is true that when an agent is acting in good faith on behalf of a principal, he is not held liable for the consequences of those actions. *Henderson v. Phillips,* 195 A.2d 400, 402 (D.C.1963). However, Plaintiff has presented evidence that would lead to an inference of discrimination on the part of Defendants; that evidence would also lead to an inference

that Defendants were not acting in good faith as agents.

Plaintiff has advanced evidence suggesting that Defendants' proffered reasons are pretext, and has also established that material disputed facts exist which cannot be resolved on summary judgment. Consequently, Defendants' motion shall be denied as to the discrimination claims.

## C. Intimidation and coercion in violation of FHA and DCHRA

■ Plaintiff also brings claims of coercion and intimidation under 42 U.S.C. § 3617 of the FHA and D.C.Code § 1–2525 of the DCHRA. Defendants argue that Plaintiff's claims are not supported by the facts, and that the verbal skirmish between Plaintiff and Defendants Brenneman and Wholihan was nothing more than a minor altercation. Plaintiff alleges that, upon contacting Defendants to inquire about whether discrimination played a factor in the decision to deny his application, Brenneman shouted at him "if you try to sue me, I have a pack of bloodsucking lawyers who will place countersuits against you for libel and drive you into the ground." Neithamer Dep. at 67–68. Defendants, however, maintain that Brenneman merely said that he had a "bulldog" of an attorney, who would vigorously defend the suit, and who may counterclaim. Wholihan Dep. at 240; Defs.' Motion at 17. Because the material fact of what transpired during that conversation is in dispute, summary judgment is inappropriate on this claim as well.

## IV. Conclusion

Plaintiff's Motion to Strike will be denied. Because there are substantial material facts in dispute, Defendants' Motion for Summary Judgment will also be denied, and the pre-trial conference shall be

---

4. Although Alida and Daryl Stephens were originally named as defendants, Plaintiff sub-

sequently dismissed all claims against them.

rescheduled. An Order will issue with this opinion