Maurice L. CARON, Sr. and Dorothy
D. Caron, Plaintiffs,

v.

CITY OF PAWTUCKET, Margaret A.
Bubis, Rocco P. Gesualdi, Jr. and
Susan M. Gesualdi, Defendants.

Fannie Bernard, et al., Plaintiffs,

v.

City of Pawtucket, et al., Defendants.

Nos. 01–464S, 00–579S.

United States District Court,
D. Rhode Island.

Feb. 27, 2004.

George M. Prescott, Esq., Lincoln, RI, for Plaintiffs Maurice & Dorothy Caron.

Stephen R. White, Esq., Warwick, RI, for Plaintiffs Fannie Bernard, Ruth Hyder, Dorothy Leo, Anna Maccarone, Jennie Bozek, Amy Ferrali, Gretchen Caldwell, Mary Burns, Giselle Maney, Ana Machado, Rita D'Angeloi, Whitmarsh, Ms., Iva Seaton, and Arlington Assisted Living Center, Inc.

Marc DeSisto, Esq., Providence, RI, for Defendant City of Pawtucket.

Stephen R. White, Esq., Warwick, RI, for Defendants Margaret A. Bubis, Rocco P. Gesualdi, Jr. and Susan M. Gesualdi.

Frank J. Milo, Jr., Esq., City Solicitor's Office, Pawtucket, RI, Marc DeSisto, Esq., Providence, RI, for Defendant City of Pawtucket.

James R. Baum, Esq., Joseph R. Gaeta, Esq., Attorney General's Office, Providence, RI, for Defendant State of Rhode Island.

### *DECISION AND ORDER*

SMITH, District Judge.

These cases [1] are the fruit of a bitter and protracted conflict involving the fate of a de facto retirement home in Pawtucket, Rhode Island. Plaintiffs Maurice L. Caron and Dorothy D. Caron, respectively in their ninetieth and eightieth decade of life, have owned property abutting the retirement home since 1941 and, over the years, have doggedly objected to its allegedly unauthorized operation. Plaintiffs Fannie Bernard and twelve others ("the Bernard Plaintiffs") are residents and owners of the retirement home and have persevered in seeking to obtain the necessary zoning certifications and approvals from the City of Pawtucket ("City") to run the retirement home.

---

**1.** On February 27, 2003, these actions were consolidated pursuant to Fed.R.Civ.P. 42(a). For convenience, they are referred to herein as the "Caron Action" and the "Bernard Action."

In spite of this Court's best efforts to assist the parties in resolving their many grievances,[2] both sets of Plaintiffs press their claims against the City and others, alleging for the most part various violations of Rhode Island state law. The only federal cause of action in either case (and, thus, the only basis for this Court's subject matter jurisdiction)[3] is the Bernard Plaintiffs' claim that the City violated their rights under the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* Now before the Court are motions for summary judgment by the Defendants in the respective actions. This Court grants summary judgment as to the Bernard Plaintiffs' Fair Housing Act claim, and dismisses without prejudice the claims in the Caron Action for want of supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(c)(3).

## I. *Facts and Procedure Common to Both Actions*

In 1990, Rocco and Susan Gesualdi ("the Gesualdis")[4] purchased property at 362 Daggett Avenue in Pawtucket, Rhode Island, which had been used as a convalescent home for the elderly since at least 1963.[5] After the purchase, the Gesualdis applied for a certificate of zoning compliance for a seventeen-bed nursing facility from the Pawtucket Director of Zoning and Code Enforcement ("the Director"), arguing that the facility was exempt from applicable zoning ordinances based on a Rhode Island statute then in existence.

*See* R.I. Gen. Laws § 45–24–22 (1990) (repealed 1994). The Director issued the requested certificate. The Carons, who reside on a property neighboring 362 Daggett Avenue and who contend that the Gesualdis illegally operated 362 Daggett Avenue as a convalescent home, appealed the decision to the Pawtucket Zoning Board of Appeals ("the Board"). The Board affirmed the Director's decision. The Carons again appealed the decision to the Superior Court, which remanded the case to the Board for additional evidence. At the rehearing in 1991, the Board revoked the certificate of zoning compliance, finding that the retirement home was not exempt from applicable zoning ordinances.

In 1993, the Gesualdis again sought a certificate of zoning compliance from the Director, this time claiming that a denial would constitute a violation of the Fair Housing Act. The Director issued the certificate on this basis. The Carons appealed the Director's decision to the Board, and the Board revoked the certificate. The Gesualdis appealed the Board's decision to the Superior Court, but while that appeal was pending, they sought a "recognition" from the Director that an eight-bed convalescent facility was a "legal non-conforming use" of the property. The Director issued this "recognition," which was confirmed by the Board, and which was

---

2. The Court recognizes that it has had this matter under advisement for somewhat longer than is its general practice. However, part of the reason for the delay is attributable to the considerable time and effort devoted by the Court to mediating the parties' dispute. For reasons that generally remain a mystery, the once agreed-to resolution disintegrated, leaving this Court with the unpleasant but necessary task of putting an end to the argument. Unfortunately, this writer is doubtful that the resolution here will end the acrimony that characterizes the parties' relationship.

3. The Court has subject matter jurisdiction over these cases pursuant to 28 U.S.C. §§ 1331 and 1367.

4. The Gesualdis are Defendants in the Caron Action and Plaintiffs in the Bernard Action.

5. The "Autumn Years Retirement Center" has been open for decades, despite the City's repeated refusals to issue the necessary zoning certificates sanctioning its operation.

then appealed by the Carons to the Superior Court.

The Superior Court consolidated the appeals of the Gesualdis and the Carons, and issued a decision in 1996 denying the certification. The Gesualdis then filed a Petition for Writ of Certiorari with the Rhode Island Supreme Court seeking review of the denial. The writ was granted and the matter was scheduled for oral argument. During the pendency of the petition, the Gesualdis filed an emergency petition with the Supreme Court seeking a stay of the Superior Court's order pending review by the Supreme Court, and in 1996 the Supreme Court granted the stay.

In 1998, while the petition was still pending, the Gesualdis sold their interest in the convalescent home to Margaret Bubis and Darlington Assisted Living Centers. Since Bubis now had an interest in the retirement home, she was added as a party petitioner to the Supreme Court action. However, at some point thereafter, the Gesualdis and Bubis withdrew their petition to the Supreme Court. Once that occurred, the Supreme Court affirmed the Superior Court judgment and lifted the stay.

While the petition was pending, Bubis attempted to obtain a certificate of zoning compliance from the City, arguing that the home was exempt from zoning laws as a "community residence" under a zoning ordinance enacted by Pawtucket after the Gesualdis had last sought the certificate. The Director initially granted Bubis the certificate, but the Board subsequently revoked the certificate and issued a written decision to that effect. No appeal was taken from this decision. The City then issued a "cease and desist" notice to Bubis on September 27, 2000, ordering her to discontinue operating the home as a convalescent facility, and the facility ceased operation on or about November 30, 2000.

In the Caron Action (filed in state court and then removed here), the Carons bring claims against the Gesualdis, Bubis, the City, and assorted City officials, for alleged harms resulting from the operation of an illegal facility (as against the Gesualdis and Bubis), and for infringing upon the Carons' constitutional rights (as against the City and its officials, pursuant to 42 U.S.C. § 1983, which formed the basis for Defendants' removal here). The City's first step was to file a motion for summary judgment on the Carons' section 1983 claims. Before the Court ruled on that motion (or contemporaneously with the Court's decision), the Carons amended their complaint to replace their section 1983 claim with a claim for negligence (on a nuisance theory) under state law, and also dismissed the individual municipal officials from the case. The Court then granted the City's motion for summary judgment on the Carons' section 1983 claims. Defendants City, Gesualdis, and Bubis now move for summary judgment on the remaining negligence claims.

In the Bernard Action, which was filed here, the underlying facts are essentially identical, other than that the owners and residents of the retirement home sue the City and several of its officers for alleged violations of the Fair Housing Act based on the City's denial of the necessary zoning certificates.

## II. Summary Judgment Standard

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). The Court must "view all facts and draw all inferences in the light most favorable to the nonmoving party." *Reich v. John Alden Life Ins. Co.,* 126 F.3d 1, 6 (1st Cir.1997) (citing *Continental*

*Cas. Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370, 373 (1st Cir.1991)).

## III. *Analysis*

### A. *The Bernard Plaintiffs' Fair Housing Act Claim*

Since this Court's subject matter jurisdiction over both actions depends on the viability of the Fair Housing Act claim, it is sensible to analyze that claim first.

The Fair Housing Act (Title VIII of the Civil Rights Act of 1968), 42 U.S.C. § 3601, *et seq.* ("FHA"), prohibits a broad spectrum of discriminatory housing practices ranging from a discriminatory refusal to rent or sell on the basis of race to discrimination in the terms and conditions of housing. *Schmidt v. Boston Housing Authority,* 505 F.Supp. 988, 993–94 (D.Mass.1981). In 1988, Congress extended the FHA's coverage by defining the term "discrimination" to include

> (A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person ... [and] (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]

42 U.S.C. § 3604(f)(3)(A) and (B).

The Bernard Plaintiffs claim that the City has made their home unavailable to them "because of a handicap of-(B) a person residing in or intending to reside in [a] dwelling," in violation of 42 U.S.C. § 3604(f)(1)(B), and has interfered with the rights granted to them by the FHA. They seek a declaratory judgment that the City's refusal to issue a certificate of zoning compliance for the retirement home for up to 16 people constitutes discrimination under the FHA, and a preliminary injunction preventing the City from enforcing its cease and desist order.

■ As an initial matter, this Court finds that the Bernard Plaintiffs have not submitted any evidence to establish that they are "handicapped" within the meaning of the FHA. Undoubtedly, they are all elderly, but "[t]he mere fact that a person is elderly does not constitute a handicap" under the FHA. *Chiara v. Dizoglio,* 81 F.Supp.2d 242, 246 (D.Mass.2000), *aff'd,* 6 Fed.Appx. 20, 2001 WL 288613 (1st Cir. 2001). The Bernard Plaintiffs have submitted eleven identical, five-paragraph affidavits, none of which asserts any alleged handicap other than being "an older person." *See* Bernard Action Complaint, Exs. 1–6, 9–13, ¶ 5.

■ Even assuming, however, that the Bernard Plaintiffs could survive summary judgment on the issue of identifying any "handicapped" individuals living in the retirement home, they nevertheless fail to proffer any genuine issue of material fact as to the other elements of their FHA claim. "To prove a violation of the [FHA], appellants can show either discriminatory intent or disparate impact." *Macone v. Town of Wakefield,* 277 F.3d 1, 5 (1st Cir.2002). It is not clear from the Bernard Plaintiffs' moving papers whether they advance only one or both possible FHA theories, so the Court will address them both.

■ A plaintiff can show discriminatory intent by either direct or indirect evidence. *Kormoczy v. Secretary, United States Dep't of Hous. & Urban Dev.,* 53 F.3d 821, 823 (7th Cir.1995). The Bernard Plaintiffs' evidence, which is limited to that which they attached to their Complaint, may be condensed to the following statements:

> The discriminatory housing practice is the denial by the City ... of a current Certificate of Zoning Compliance and the issuance by the City of an Order to Cease and Desist the operations of a

state license [sic] Residential Care/Assisted Living Facility for 16 elderly and handicapped female residents. . . .

Because there is a Rhode Island Superior Court Order dated August 1, 1995 and a history of multiple appeals previously taken to the Zoning Board of Appeals of the City of Pawtucket, as well as to and from the Providence Superior Court, all of which declined to recognize the FHA, further municipal or state appeals were and are fruitless because each state forum improperly refused to recognize the applicability of the FHA to the facts of this situation.

Bernard Pl. Mem. Opp. Summ. Judg., at 5. None of this is direct evidence of the City's discriminatory intent to deprive the Bernard Plaintiffs of their rights under the FHA. Nor is it indirect evidence of discriminatory intent. It may be true that the Director and Board reversed their positions with greater frequency than was wise, and that "procedural abnormalities can provide a basis for finding discriminatory intent." *Macone,* 277 F.3d at 6. Yet the record is bereft of any evidence demonstrating that these reversals were motivated by any animus toward disabled persons, and the Board's lack of a uniform position with respect to the zoning status of the retirement home is more readily attributable to its own confusion and the tenacity and perseverance of the appellants than anything else. Furthermore, the cease and desist notice issued by the City is nothing more than a wholly appropriate and legal method of enforcing the City's zoning decisions. There is no direct or circumstantial evidence of discriminatory intent by the City against the Bernard Plaintiffs.

"[W]hen a plaintiff offers no direct evidence of discrimination, his claim of discrimination under the FHA is to be examined under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d

668 (1973), established in Title VII cases." *Neithamer v. Brenneman Property Services, Inc.,* 81 F.Supp.2d 1, 3–4 (D.D.C. 1999) (collecting cases from various circuit courts of appeal stating the same). To make this showing, a plaintiff must demonstrate, *inter alia,* that he was "rejected under circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see Macone,* 277 F.3d at 7 ("Another route to establishing a prima facie case of racial discrimination under the [FHA] is to show that appellee's actions 'actually or predictably [result] in . . . discrimination.' ") (citation omitted).

■ Here, too, Plaintiffs fail to meet their burden. Unlike in the 'discriminatory intent' analysis, the Court now looks "only at the effect of the Board's actions, not its motivations." *Id.* That the decision of the City to deny the certificate took some time to coalesce is irrelevant unless the Bernard Plaintiffs can show that the City's actions impacted them in a discriminatory manner. They have not done this. They have not presented any information about Pawtucket's historical treatment, in the context of zoning, of convalescent homes, or of how the City's treatment of their home was a significant and discriminatory departure from that practice. The FHA "imposes no affirmative obligation on municipalities to approve *all* proposed . . . housing projects." *Id.* at 8 (emphasis in original). There is no evidence that other convalescent homes would be denied the necessary zoning certifications in Pawtucket as a result of either the Board's ultimate decision to revoke the certification for the Bernard Plaintiffs' home or the City's cease and desist order enforcing that decision. The Bernard Plaintiffs have therefore failed to offer sufficient evidence to establish a prima facie case of discrimina-

tory impact under the FHA, and summary judgment is granted as to that claim.

### B. *Jurisdiction Over The Caron Action*

■ The claims in the Caron Action are rooted exclusively in Rhode Island state law. This jurisdictional hiccup calls to the Court's attention the question of whether dismissal under 28 U.S.C. § 1367(c) is proper:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) [6] if-
>
> . . . . .
>
> (3) the district court has dismissed all claims over which it has original jurisdiction[.]

28 U.S.C § 1367(c)(3). Whether to "retain or to relinquish" jurisdiction over claims supplemental to a defunct federal claim is a decision committed to the trial court's discretion. *See Serapion v. Martinez,* 119 F.3d 982, 993 (1st Cir.1997).

■ This Court sees no reason to retain the supplemental claims in the Caron Action. Those claims involve the Rhode Island Tort Claims Act and sundry theories of common law negligence that, by themselves, have no business in federal court. Therefore, pursuant to 28 U.S.C. § 1367(c)(3), the Caron Action is dismissed without prejudice to refiling, should the Carons wish it, in state court.

### IV. *Conclusion*

For the foregoing reasons, the motion for summary judgment in the Bernard Action is GRANTED, and the Caron Action is DISMISSED without prejudice for lack

---

**6.** Subsection (a) is the general provision calling for supplemental jurisdiction over claims that are so related to claims over which the

of supplemental jurisdiction under 28 U.S.C. § 1367(c)(3).

IT IS SO ORDERED.

court has original jurisdiction as to form part of the same case or controversy. *See* 28 U.S.C. § 1367(a).