Patricia PINA, Plaintiff

v.

**TOWN OF PLYMPTON, et. al., Defendants.**

**Civil Action No. 03–11949–NG.**

United States District Court, D. Massachusetts.

Oct. 31, 2007.

Donald H. Barnes, Jr., Law Office of Donald H. Barnes, Rochester, MA, for Plaintiff.

Deborah I. Ecker, Brody, Hardoon, Perkins & Keston, Boston, MA, for Defendants.

REPORT AND RECOMMENDATION

GERTNER, District Judge.

Report and Recommendation Adopted by Gertner, D.J. on October 31, 2007.

## FINDINGS AND RECOMMENDATIONS ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ALEXANDER, United States Magistrate Judge.

Plaintiff, Patricia Pina ("Pina"), brings this action, originally in State court and properly removed to this Court, pursuant to the Federal Fair Housing Act, 42 U.S.C. § 3604, (hereinafter "FHA"), alleging that the Zoning Board for the Town of Plympton, Massachusetts (hereinafter "Zoning Board") improperly denied Pina a special permit for the placement of mobile homes on her property.[1] At base, Pina claims that the Defendants, the Town of Plympton and various town officials [2] (collectively "Plympton"), discriminated against her on the basis of race, national origin, and gender identity and against prospective farm workers on the basis of race and national origin. Defendants file the instant motion seeking summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. In so doing, Plympton avers that there are no genuine issues at to any material fact.

This Court will allow a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cassesso v. Comm'r of Corr.*, 390 Mass. 419, 422, 456 N.E.2d 1123 (1983) (citations omitted); Fed R. Civ. P. 56(c). *See NASCO, Inc. v. Pub. Storage, Inc.*, 29 F.3d 28, 32 (1st Cir.1994); *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991). The burden to affirmatively demonstrate the absence of a triable issue is the movant's. *Pederson v. Time, Inc.*, 404 Mass. 14, 16–17, 532 N.E.2d 1211 (1989).

This dispute arose from Pina's initial attempts to obtain a permit for the placement of mobile homes on her property for the purpose of housing prospective laborers for her farm.[3] Pina owns property in Plympton, Massachusetts, zoned for agricultural uses, that she uses to raise livestock. Pina's efforts to place mobile homes on her property, were designed to further her desire to expand her business by participating in the H–2A guest worker program,[4] the regulations of which required her to provide housing for non-local workers.

In furtherance of her plan, Pina submitted an application to the Building Inspector/Zoning Officer to permanently place mobile homes on the property to accommo-

---

1. Pina's Amended Complaint appears to cite 42 U.S.C. §§ 3604(a), 3614(a), 3614(d)(1)(A), 3614(d)(1)(B) and 28 U.S.C. § 2201 as independent causes of action. Although this Court ultimately finds no material issue of fact as to any aspect of this lawsuit, meriting summary judgment for Defendants regardless, the Court notes that, neither 42 U.S.C. § 3614(a) nor 28 U.S.C. § 2201 provide for separate causes of action. *This Court*, therefore, Recommends that Plaintiff's claims pursuant to those sections be dismissed outright.

2. Defendants include: Stephan Matter, William McClean, Edward Murray, Scott Sauchuck, as they constitute the Plympton Board of Appeals, not individually, Fred Svenson, as Building Inspector and Zoning Officer of Plympton and not individually, and the Town of Plympton.

3. The facts detailed below are gleaned from the affidavits submitted by Pina as well as the decision of the Land Court, cited infra.

4. The H–2A program, run through the United States Department of Labor, allows farmers to hire alien workers for season or year round agricultural work when farmers are unable to find sufficient qualified, willing, and able workers domestically.

date these prospective workers. Pina's application was verbally denied. Despite the denial, Pina moved one mobile home onto the property in August 2002. In December 2002, Pina submitted an application to permanently place three additional mobile homes on her property. This application was also verbally denied. Again, despite the latest denial, Pina moved three mobile homes onto her property in January and February 2003. In June 2003, Pina again applied for permits for the four mobile homes currently on her property, and was verbally denied for the third time.

On or around June 30, 2003, Pina appealed the denial of the permits to the Zoning Board of Appeals, (hereinafter "ZBA"), and in the alternative requested a special permit from the ZBA for temporary use of the mobile homes. The ZBA noted that the Building Inspector/Zoning Officer did not have the authority, pursuant to Town of Plympton By–Law (hereinafter "By–Law") § 7.2, to issue building permits for the permanent placement of mobile homes on the property. The ZBA, therefore, concluded that the Building Inspector/Zoning Officer correctly denied the original permit applications.

The ZBA next considered Pina's alternative application for a special permit from the ZBA to temporarily place the mobile homes on her property. By–Law § 6.3 requires a special permit for any mobile home that will be placed on property in excess of sixty days. Likewise, By–Law § 7.2 prohibits the issuance of a special permit for the placement of mobile homes in excess of one year. On August 12, 2003, the ZBA held a public hearing on Pina's applications where it also heard public comments. After the hearing and completing its review of the matter, the ZBA issued a unanimous decision on September 3, 2003 denying Pina's application for a special permit. Briefly, the ZBA found that Pina had not demonstrated the necessity of the trailers to her ongoing business, that Pina did not provide any semblance of a feasible business plan to successfully incorporate the mobile homes into her business, and that the current plans for the placement of the mobile homes were not in keeping with the character of the existing neighborhood and aesthetically displeasing.

After her failed attempts to obtain satisfaction through the local government channels available, Pina brought suit in Massachusetts Land Court, seeking a ruling that Massachusetts General Law (hereinafter "M.G.L.") Chapter 40A § 3, entitled her to place mobile homes on her property as a matter of right. A finding in Pina's favor would have rendered a special permit unnecessary, and effectively reverse the Zoning Board's decision to deny the permits. The statute states in relevant part,

> No zoning ordinance or by-law shall regulate or restrict the use of materials, or methods of construction of structures regulated by the state building code, nor shall any such ordinance or by-law prohibit, unreasonably regulate or require a special permit for the use of land for the primary purpose of agriculture ...

M.G.L. ch. 40A § 3 (2004). Pina challenged whether the statutory regulation included structures on agricultural land.[5]

---

5. In light of the pending action before the Land Court, this Court issued a stay of the federal action pending the Land Court's ruling, finding that said ruling would likely inform this Court's analysis, narrow the issues at bar, and afford the property comity to a state court proceeding. In light of the Land Court's ruling, that stay was subsequently lifted. The Court notes for the record that an additional stay implemented due to Bankruptcy proceedings has also since been lifted.

On June 30, 2005 the Land Court ruled that M.G.L. ch. 40A § 3 applied to existing structures on agricultural land rather than new structures. *Pina v. Town of Plympton,* Mass. Land Ct., Misc. No. 295095 (June 30, 2005). As such, Pina was not entitled to place mobile homes on her property as a matter of right, but rather the Zoning Board is authorized to regulate the placement of mobile homes on agricultural land. Relying heavily on *Prime v. Zoning Board of Appeals,* the Land Court ruled that a special permit was still required for new structures, including mobile homes. Pina, Misc. No. 295095; *see* 42 Mass.App.Ct. at 802, 680 N.E.2d 118. The court drew a distinction between existing structures on agricultural land, which were not subject to the provisions of M.G.L. ch. 40A § 3, and new structures on agricultural land, which were subject to the provisions of M.G.L. ch. 40A § 3. The mobile homes in question represented new structures and, therefore, were subject to regulation by the zoning board. Pina, therefore, is not entitled to place mobile homes on her property as a matter of right. The Land Court found that while existing agricultural structures do enjoy certain statutory protections, "proposals for new structures may be reasonably regulated, and a special permit may be required." *Prime v. Zoning Board of Appeals,* 42 Mass.App. Ct. 796, 802, 680 N.E.2d 118 (1997).

The Land Court, undertaking de novo review of the matter, provided a well-reasoned decision with a succinct articulation of the issues, facts, and applicable laws and by-laws necessary to aid the adjudication of this matter. This Court, of course, does not review the Land Court's decision, but employs that decision as an instructive tool in the analysis of whether the ZBA engaged in conduct violative of rights guaranteed under the FHA.

■ "To prove a violation of the Fair Housing Act, [a plaintiff] can show either discriminatory intent or disparate impact." *Macone v. Town of Wakefield,* 277 F.3d 1, 5 (1st Cir.2002). While the Amended Complaint is not as clear as could be, even a liberal reading permits this Court to only consider Pina as having alleged discriminatory intent and not also disparate impact claims. Accordingly, the Court solely addresses Pina's discriminatory intent claim.

■ "A plaintiff can show discriminatory intent by either direct or indirect evidence." *Caron v. City of Pawtucket,* 307 F.Supp.2d 364, 368 (D.R.I.2004) (citing *Kormoczy v. Sec'y, United States Dep't of Hous. & Urban Dev.,* 53 F.3d 821, 823 (7th Cir.1995)). Briefly, as discussed in more detail below, Pina is unable to show any direct or indirect evidence of discriminatory intent. There is, simply, no direct evidence constituting discriminatory intent. *See Caron,* 307 F.Supp.2d at 369 (unfavorable city zoning decisions, standing alone, do not constitute any direct (or indirect) evidence of the city's discriminatory intent). Further, the only indirect evidence Pina offers are comments that could be construed as racially discriminatory, allegedly *made by a member of the public* during the August 12, 2003 public hearing. None of these comments are attributed to Defendants. *Cf. Macone,* 277 F.3d at 5–6 (explaining that even comments made by board members may be insufficient to thwart summary judgment); *see also Nat'l Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 743–44 (1st Cir.1995) ("While ambiguous remarks may, under some circumstances, help to illuminate the summary judgment record, such remarks rarely will suffice to conceive an issue of material fact when none otherwise exists.").

■ "When a plaintiff offers no direct evidence of discrimination, his claim of dis-

crimination under the FHA is to be examined under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), established in Title VII cases." *Caron*, 307 F.Supp.2d at 369 (quoting *Neithamer v. Brenneman Prop. Serv., Inc.*, 81 F.Supp.2d 1, 3–4 (D.D.C.1999)). Under this framework, even before the first burden shift:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (I) that [s]he belongs to a racial minority; (ii) that [s]he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite [her] qualifications, [s]he was rejected; and (iv) that after [her] rejection, the position remained open and the employer continued to seek applications from persons of the complainant's qualifications.

*McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817 (setting forth the standard for the initial burden for a Title VII employment discrimination case, the same standard appropriate in an alleged violation of the FHA based on racial discrimination). As detailed below, Pina does not come close to establishing even a prima facie case of discrimination. Accordingly, this Court need not expand upon the later prongs of the *McDonnell Douglas* burden-shifting analysis whereby the Defendants would have to articulate a legitimate, non-discriminatory reason for the adverse ac-

tion, and if so established, Pina would have to prove that the proffered reason was pretextual.

■ As adopted by the Ninth Circuit in a similar situation, to establish a prima facie case of disparate treatment, plaintiff must establish that: (1) she is a member of a protected class; (2) she applied for a permit and was qualified to receive it; (3) the permit was denied despite plaintiff being qualified; and (4) the defendant approved the same type of permit for a similarly situated party during a period relatively near the time plaintiff was denied her permit. *Gamble v. City of Escondido*, 104 F.3d 300, 305 (9th Cir.1997).

■ Pina's Cape Verdean ancestry satisfies the first element in the *McDonnell Douglas* and *Gamble* analysis, in that she is a member of a racial minority.[6] As to the second element, Pina's qualifications, the ZBA, confirmed by the Land Court after *de novo* review, listed several reasons for the denial of the sought permits. Among others, the ZBA found that the By–Laws disfavor the use of mobile homes, Pina failed to demonstrate that the denial of the permits would hinder agricultural use of the property, Pina was unable to demonstrate that she could adequately support the prospective workers the mobile homes were intended to house,[7] and Pina failed to provide the ZBA with minimum site information required of all applicants. Accordingly, the ZBA stressed its doubts concerning the practical and financial feasibility of Pina's business plan.

---

**6.** In that Pina satisfies the first element of the inquiry on the basis of her Cape Verdean ancestry, this Court need not address the her discrimination claim based on gender identity. For the purposes of the present decision, it does not matter what category of protected class Pina may fall into, only that the analysis proceeds forward with the understanding that she is a member of a protected class.

**7.** At the time of the hearing, Pina's admitted entire income totaled $20,126, which the ZBA found inadequate to support the proposed employees. Previously, Pina relied on the assistance of six to twelve volunteers.

Even if the ZBA granted the special permit, By–Law § 7.2 bars the ZBA from issuing any permits to place mobile homes on any property for longer than one year. By–Law § 7.1.2 provides that special permits shall only be issued when, "the applicant has no reasonable alternative available to accomplish this purpose in a manner more compatible with the character of the immediate neighborhood." The ZBA also noted that placing four mobile homes on the property, which already has a house located on it, violates By–Law § 5, which prohibits more than one dwelling per lot. Based on the evidence set forth above, this Court concurs with the decision of the Land Court affirming the reasonableness of the original ZBA decisions that Pina was not qualified to obtain the sought permits. Pina, therefore, can satisfy neither the second nor third elements in the *McDonnell Douglas* and *Gamble* analysis. As such, the inquiry essentially ends there. However, the Court addresses the fourth element below for the sake of providing a fully reasoned decision with additional support.

■ Pina is unable to prove the fourth element, that the ZBA granted a special permit to any other applicants. Pina puts forth evidence that two white farmers possess mobile homes on their property, that Plympton is aware of their presence, and that Plympton has not required the farmers to remove the mobile homes. Plympton admits the truth of this allegation, but responds that the mobile homes in question have been present on these farms for several decades and that the town does not have the authority to mandate they be removed. Specifically, the mobile homes in question are pre-existing structures that do not fall under the ambit the ZBA. Accordingly, pursuant to M.G.L. ch. 40A § 7, the Town of Plympton is barred from taking any action to remove these mobile homes. Further, Pina points to no evidence that the By–Laws restricting the use of mobile homes have been officially subverted since their enactment. Accordingly, no evidence to the contrary having been presented, Pina fails to establish the fourth element necessary to establish a prima facie case of discrimination, that the ZBA granted permits for the placement of mobile homes to other applicants.

In sum, it is undisputed that Pina is of Cape Verdean descent, and, thus, satisfies the first element in the *McDonnell Douglas* and *Gamble* analysis; she belongs to a racial minority. However, Pina fails on the second and third elements; that she was qualified to receive the permit for which she applied and was nonetheless rejected. As noted above, Pina's applications not only ran afoul of the By–Laws, but Pina was also unable to establish a need for the housing, a feasible business plan for the housing, or an aesthetically acceptable option for the housing. Pina, therefore, was not "qualified" to receive the sought permits and, thus, fails to satisfy either the second or third elements. Likewise, the Court notes that the record is devoid of any evidence suggesting that the ZBA granted the same special permit to any other applicant for the placement of mobile homes on their property. Therefore, Pina is unable to establish the fourth element required for a prima facie case; that other applicants were granted the request sought by the plaintiff. As Pina is unable to meet all of the elements necessary to establish a prima facie case of discrimination or disparate treatment, this Court finds that summary judgement in favor of Plympton on the basis of her FHA claim of discriminatory intent is appropriate.

■ Pina's other claim under the FHA, is that the Defendants' actions were viola-

tive of the rights of prospective workers "[t]raditionally ... Black Jamaicans or persons of Hispanic descent." Second Amended Complaint at ¶ 11. Simply stated, for substantially the same reasons why Pina's individual claims fail, so do those ostensibly made on behalf of these prospective workers. Specifically, Pina has not provided any direct or indirect evidence of discrimination by the ZBA. Significantly, the FHA "imposes no affirmative obligation on municipalities to approve *all* proposed ... housing projects." *Macone,* 277 F.3d at 8 (emphasis in original). As found by the Land Court, as this Court likewise gleans from the evidence before it, the ZBA undertook a reasonable review of Pina's application and rendered a reasonable decision denying them. This Court finds absolutely no evidence of discrimination and, accordingly, FINDS summary judgment in favor of Defendants appropriate.

Where Pina has not presented any credible evidence of discrimination by ZBA or any other defendants, where Plympton has provided sufficient evidence demonstrating that Pina was not qualified to receive a special permit for her mobile homes and that at no time was a special permit for mobile homes granted to any other applicant, and where Pina is unable to maintain this action on behalf of herself because she is unable to prove a prima facie case of discrimination, her claim on behalf of prospective workers is also unable to stand as lacking even the requirements necessary to meet the burden of establishing a prima facie case. Thus, based on the aforementioned, this Court FINDS that the ZBA did not violate the FHA as to Pina, nor may Pina sustain an FHA claim as to prospective workers. There being no genuine issue of material fact, this Court hereby RECOMMENDS summary judgment be granted in Defendants' favor.

SO ORDERED.

Sept. 27, 2007.