**WEST STREET GROUP LLC, Plaintiff,**

v.

**Sherm EPRO, Jerald S. Savage, Herbert Musmon, Peter Barron, and Robert O'Regan, as members of the Town of Stoughton Zoning Board of Appeals, The Town of Stoughton, Horsley Witten Group, Inc., Richard H. Heaton, and H & H Consulting Associates LLP, Defendants.**

**Civil Action No. 08–10010–JLT.**

United States District Court, D. Massachusetts.

July 10, 2008.

---

Joseph F. Krowski, Jr., Law Offices of Joseph F. Krowski, Joseph F. Krowski, Sr., Joseph F. Krowski Law Offices, Brockton, MA, for Plaintiff.

Gregg J. Corbo, Ilana M. Quirk, Kopelman & Paige, PC, Kristyn M. Dery, John A. Kiernan, Bonner, Kiernan, Trebach & Crociata, LLP, Boston, MA, Jason R. Talerman, Blatman, Bobrowski & Mead, LLC, Millis, MA, for Defendants.

## MEMORANDUM

TAURO, District Judge.

Plaintiff West Street Group LLC, a real estate developer, filed the instant lawsuit after applying for, and ultimately receiving, a comprehensive permit to build a multifamily residential development in Stoughton, Massachusetts. Dissatisfied with the results of the permitting process, Plaintiff now seeks damages and injunctive relief from a wide web of parties associated with its permit application.

Before this court are two motions: Defendant Horsley Witten's *Motion to Dismiss* [# 8], and Defendants Stoughton, Epro, Savage, Musmon, O'Regan and Barron's *Partial Motion for Judgment on the Pleadings as to Counts II and III* [# 12]. For the reasons below, this court GRANTS Defendants' *Partial Motion for Judgment on the Pleadings as to Counts II and III*, and DENIES AS MOOT Defendant Horsley Witten's *Motion to Dismiss*. Because this court declines to exercise supplemental jurisdiction in this matter, Plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE.

## I. FACTUAL BACKGROUND [1]

Before turning to the facts of the case, this court pauses briefly to introduce the cast of characters. Plaintiff is a real estate developer in Stoughton, Massachusetts.[2] It is suing Defendants Sherm Epro ("Epro"), Jerald Savage ("Savage"), Herbert Musmon ("Musmon"), Robert O'Regan ("O'Regan") and Peter Barron ("Barron") in their official capacities as members of the Town of Stoughton Zoning Board of Appeals ("ZBA").[3] It is suing the Town of Stoughton ("Stoughton") for violating its constitutional rights under 42 U.S.C. § 1983.[4] It is suing Defendant Horsley Witten Group, Inc. ("Horsley Witten") for serving as a consultant to the Town of Stoughton's Open Space Committee and the Conservation Commission.[5] Finally, Plaintiff is suing Defendants Richard Heaton ("Heaton") and H & H Consulting Associates LLP ("H & H"), who served as consultants to the ZBA.[6]

In July 2005, Plaintiff was in the process of developing a Massachusetts General Laws chapter 40B housing development (low and moderate income housing) known as "The Villages at Stonegate" on undeveloped land in Stoughton, Massachusetts.[7] In September 2005, the Stoughton Board of Selectman ("Board") endorsed Plaintiff's plans under the Local Initiative Program ("LIP")[8] for construction of 140 condominium units.[9] After "intense lobbying by opponents," however, including letters sent by the Stoughton Open Space Committee,[10] the Board voted to reconsider its LIP endorsement.[11] The Board subsequently rescinded the LIP endorsement.[12] The Board then instructed Plaintiff to dis-

---

**1.** For the purposes of Defendants Stoughton, Epro, Savage, Musmon, O'Regan, and Barron's *Partial Motion for Judgment on the Pleadings as to Counts II and III*, the facts shall be examined in the light most favorable to the Plaintiff. All well-pleaded facts stated in the complaint shall be taken as true, and all reasonable inferences shall be drawn in Plaintiff's favor. *See generally Pasdon v. City of Peabody*, 417 F.3d 225, 226 (1st Cir.2005); *Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir.2000) (citations omitted).

**2.** Compl. at ¶ 2.

**3.** *Id.* at ¶¶ 3–7.

**4.** *Id.* at ¶¶ 8, 112.

**5.** *Id.* at ¶ 9. The Stoughton Open Space Committee compiled an "open space plan" for the Town based on the input of neighbors. *Id.* at ¶¶ 17–19.

**6.** *Id.* at ¶¶ 10–11.

**7.** *Id.* at ¶¶ 12–13. Massachusetts General Law chapter 40B, §§ 20–23 lay out the bureaucratic warren of procedures needed to develop a low to moderate income housing project. In brief, developers of such projects need only file one application with the local Zoning Board of Appeal. *Id.* at § 21. If the

Board approves of the application, it will issue a comprehensive permit. *Id.* As part of the application, a developer must show proof that it is receiving federal or state subsidies. *Id.* at § 20. A subsidy, for these purposes, may include technical assistance such as that provided by a Local Initiative Program ("LIP"). 760 Mass.Code Regs. 56.02 (2008); *Town of Middleborough v. Hous. Appeals Comm.*, 449 Mass. 514, 870 N.E.2d 67, 77 (2007).

**8.** The "Local Initiative Program is a state program that encourages the creation of affordable housing by providing technical assistance to communities and developers." *See* Executive Office of Housing and Economic Development, Local Initiative Program, http://www.mass.gov/?pageID=ehedterminal&L=3&L0=Home&L1=Community+Development&L2=Chapter+40B+Planning&sid=Ehed&b=terminalcontent&f=dhcd_hd_lip_lip&csid=Ehed.

**9.** Compl. at ¶ 15.

**10.** *Id.* at ¶ 19.

**11.** *Id.* at ¶ 21.

**12.** *Id.*

cuss the development with potential neighbors before returning to the Board for further deliberation.[13]

Through January 2006, Plaintiff met with potential neighbors and other interested persons to revise its development plans.[14] Plaintiff incorporated their concerns into a new proposal, reducing the number of units from 140 to 120 and adding buffer zones to the development.[15] Plaintiff reapplied for the LIP endorsement, which the Board granted on May 9, 2006.[16]

On September 12, 2006, the Massachusetts Department of Housing and Community Development ("DHCD") issued a determination of site eligibility, and preliminarily approved the project under the LIP endorsement.[17] On or about September 18, 2006, Plaintiff applied for a comprehensive permit from the ZBA.[18] Though Massachusetts law requires the ZBA to hold a public hearing within thirty days of an application,[19] the ZBA failed to do so.[20] After informal discussions with Plaintiff, the ZBA convened the first public hearing in January 2007.[21]

To delineate wetlands and resource areas for the project, Plaintiff filed an Abbreviated Notice of Resource Area Delineation ("ANRAD") with the Town Conservation Committee ("TCC").[22] The TCC and Plaintiff discussed a number of potential consultants to undertake the review.[23] Plaintiff specifically objected to the retainer of Horsley Witten as a consultant because Jonathan Witten, who founded the consultancy, served as counsel to the neighborhood opposition group.[24] According to Plaintiff, although Jonathan Witten was no longer affiliated with Horsley Witten, his prior ownership interest gave the appearance of bias.[25] Nonetheless the TCC retained Horsley Witten.[26] Simultaneously, Horsley Witten was working for the Open Space Committee on an "open space plan" involving the development.[27]

At a public hearing on May 3, 2007, the ZBA referred Plaintiff's proposal to an engineering consultant.[28] The ZBA also voted to refer the proposal to an environmental consultant.[29] The ZBA, however, was subsequently unable to retain Horsley Witten's services as an environmental consultant.[30] To avoid delay, Plaintiff retained its own wetlands and wildlife consultant to review the plans.[31]

At a public hearing on June 21, 2007, ZBA's engineering consultant reported

13.  *Id.* at ¶ 22.

14.  *Id.* at ¶ 23.

15.  *Id.* at ¶ 24.

16.  *Id.* at ¶¶ 25–26.

17.  *Id.* at ¶ 28.

18.  *Id.* at ¶ 29.

19.  Mass. Gen. Laws ch. 40B, § 21.

20.  Compl. at ¶ 30.

21.  *Id.* at ¶¶ 31–32.

22.  *Id.* at ¶ 33.

23.  *Id.* at ¶ 34.

24.  *Id.* at ¶ 35.

25.  *Id.*

26.  *Id.* at ¶ 36.

27.  *Id.* at ¶ 37.

28.  *Id.* at ¶ 46.

29.  *Id.*

30.  Horsley Witten declined to serve as environmental consultant for the ZBA. *See id.* at ¶ 48.

31.  *Id.* at ¶ 49.

that Plaintiff "had substantially complied with all engineering and planning recommendations."[32] At August 2007 public hearing, the ZBA invited all interested parties to submit draft decisions on the matter for the Board's review.[33] The ZBA convened a final public hearing in October 2007.[34] The ZBA heard no further testimony, however, because the ZBA closed the hearings at the beginning of the meeting.[35]

At a general meeting held on November 8, 2007, the ZBA voted on several elements of the application.[36] The ZBA approved the project, subject to four conditions: (1) Plaintiff must obtain a declaration that it has a right to construct and use an emergency access road; (2) the development was limited to 80 units; (3) "all parking for the garden style units shall be below grade and no building shall exceed [2.5] stories;" and (4) "the emergency access way shall be installed and paved."[37]

On December 7, 2007, Plaintiff filed suit against various Defendants involved in the permitting process in Norfolk Superior Court.[38] Plaintiff alleged six counts in its Complaint, including: (1) an appeal pursuant to Massachusetts General Laws chapter 40A, § 17 objecting to the four condi- tions set forth in the ZBA's approval; (2) violation of 42 U.S.C. § 1983; (3) violation of Massachusetts General Laws chapter 12, § 11I; (4) tortious interference with economic relations; (5) tortious interfer- ence of advantageous relations; and (6) violation of Massachusetts General Laws chapter 93A, § 11. Under 42 U.S.C. § 1983, Plaintiff alleged both procedural and substantive due process violations.[39] Plaintiff later added an equal protection claim as well.[40]

Plaintiff alleged misconduct on the part of (1) individual ZBA members Barron and O'Regan; (2) Horsley Witten; (3) Heaton; (4) H & H; and (5) Stoughton.[41] Barron, while on the ZBA, was a member of the neighborhood opposition group.[42] He was also trying to sell property near the pro- posed development site at the time of Plaintiff's application.[43]

O'Regan allegedly submitted a negative opinion piece about low income housing projects to a local newspaper the night before the ZBA vote.[44] In addition, during the search for a consultant, O'Regan alleg- edly misrepresented Heaton as a Certified Public Accountant ("CPA") when, in fact, Heaton was not certified as such.[45] The ZBA subsequently retained Heaton, par- tially on the basis of this qualification.[46]

---

32. *Id.* at ¶ 47.

33. *Id.* at ¶ 56.

34. *Id.* at ¶ 57.

35. *Id.* at ¶ 61.

36. *Id.* at ¶¶ 63–65.

37. *Id.* at ¶¶ 70, 108.

38. *See* Summons, Ex. to Notice of Removal, 1 [# 1–3].

39. Compl. at ¶ 113.

40. Plaintiff did not allege equal protection violations in its Complaint. Only in its Oppo- sition to Defendant Town of Stoughton's Mo-

tion for Partial Judgment on the Pleadings [# 18] does Plaintiff raise an equal protection claim. This court will nevertheless consider the claim.

41. Compl. at ¶¶ 73–106.

42. *Id.* at ¶ 73.

43. *Id.* at ¶ 74.

44. *Id.* at ¶ 77.

45. *Id.* at ¶ 78.

46. *Id.* One of the other board members had specified that a CPA was a prerequisite for any consultant. *Id.*

Barron and O'Regan allegedly "engaged in a pattern of disingenuous conduct during the discussion of the draft decision, whereby they pressed for certain conditions ... which would make the project uneconomic to build...." [47]

Plaintiff alleged that Horsley Witten, together with Heaton and H & H, "intentionally engaged in a calculated effort of wrongful coercion, interference, and influence of public boards and processes...." [48] Horsley Witten also allegedly used flawed and improper methodology in their consulting work, for which it allegedly charged excessive fees.[49]

Plaintiff alleged that Defendant Stoughton (1) delayed and interfered with Plaintiff's application, allowing it to sit "idle for a period of nearly four months;" (2) incorporated conditions in the LIP at the written request of the neighborhood opposition "without providing [Plaintiff] any notice or opportunity to be heard;" (3) expedited review of other projects "in order to frustrate [Plaintiff's] Stonegate application;" and (4) "[s]ystematically refus[ed] to provide copies of public documents to [Plaintiff]." [50]

On January 4, 2008, Defendants removed the case to federal court. On January 22, 2008, Defendant Horsley Witten filed a *Motion to Dismiss.* On February 19, 2008, Defendants Stoughton, Epro, Savage, Musmon, Barron, and O'Regan filed a *Motion for Judgment on the Pleadings.* This court held a Motion Hearing on May 6, 2008 and took the Motions under advisement.

## II. DISCUSSION

Because federal jurisdiction hinges on Plaintiff's 42 U.S.C. § 1983 claim, this court begins its analysis there. Section 1983 provides the following cause of action:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within, the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.... [51]

### A. Standard for a Judgment on the Pleadings

█ "The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as that for deciding a Rule 12(b)(6) motion." [52] All well-pleaded facts stated in the complaint shall be taken as true, and all reasonable inferences should be drawn in favor of the plaintiff.[53] Plaintiff's complaint can be dismissed only if it fails "to state a claim upon which relief can be granted." [54]

### B. Plaintiff's Section 1983 Claim

#### 1. Procedural Due Process

█ To establish a procedural due process violation, Plaintiff must show that (1) "it has a property interest as defined by

---

**47.** *Id.* at ¶ 81.

**48.** *Id.* at ¶ 125.

**49.** *Id.* at ¶ 129.

**50.** *Id.* at ¶ 105.

**51.** 42 U.S.C. § 1983.

**52.** *Pasdon v. City of Peabody,* 417 F.3d 225, 226 (1st Cir.2005).

**53.** *Langadinos v. Am. Airlines, Inc.,* 199 F.3d 68, 69 (1st Cir.2000) (*citing Rogan v. Menino,* 175 F.3d 75, 77 (1st Cir.1999)).

**54.** Fed.R.Civ.P. 12(b)(6).

state law," and (2) Defendants "deprived it of that property interest without constitutionally adequate process." [55]

■ Here Plaintiff fails to show that it has the necessary property interest. To have a property interest in a benefit, such as an approval or endorsement by a town board, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." [56]

■ Given the discretionary nature of both the LIP endorsement [57] and the ZBA's approval,[58] Plaintiff does not have a legitimate entitlement to the benefit. A discretionary benefit is, by definition, not an entitlement. In a similar case, the First Circuit specifically held that "the discretionary nature of the [Board of Selectman's] act in rescinding its approval negates any entitlement claim...." [59] Accordingly, discretionary benefits cannot qualify as property interests for the purposes of due process. This analysis conforms with the jurisprudence of this district.[60]

Because Plaintiff lacks a cognizable property interest, its procedural due process claim cannot stand.

### 2. Substantive Due Process

■ As in the procedural due process context, Plaintiff must first establish a protected property interest to advance a substantive due process claim.[61] As explained above, Plaintiff has failed to identify a cognizable property interest.

The First Circuit has, however, "left the door slightly ajar" for substantive due process claims in "truly horrendous situations." [62] Plaintiff's experience with the application process, however, does not rise to that very high threshold. The First Circuit has articulated guidelines to assist lower courts determine just how "ajar" the door should be:

> The case law contains some helpful generalizations. We know, for example, that in order to shock the conscience, conduct must at the very least be "extreme and egregious," or, put another way, "truly outrageous, uncivilized, and intolerable." We also know that "[m]ere violations of state law, even violations resulting from bad faith," do not invari-

---

**55.** *PFZ Props., Inc. v. Rodriguez,* 928 F.2d 28, 30 (1st Cir.1991) (*citing Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982)).

**56.** *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

**57.** *See Welch v. Paicos,* 66 F.Supp.2d 138, 165–66 (D.Mass.1999) (Garrity, J.).

**58.** *See, e.g., Britton v. Zoning Bd. of Appeals of Gloucester,* 59 Mass.App.Ct. 68, 794 N.E.2d 1198, 1203–04 (2003) (a zoning board has "discretion to deny a permit application even if the facts found by the court would support its issuance"); *Davis v. Zoning Bd. of Chatham,* 52 Mass.App.Ct. 349, 754 N.E.2d 101, 106 (2001) ("[T]he board retains discretionary authority to deny the permit so long as that

denial is not based upon a legally untenable or arbitrary and capricious ground.") (citations omitted).

**59.** *See Macone v. Town of Wakefield,* 277 F.3d 1, 9 (1st Cir.2002).

**60.** *See id.; Welch,* 66 F.Supp.2d at 165 ("Since the Selectmen's approval of a LIP development is not routinely granted ... plaintiff cannot claim a property interest while applying for that approval.").

**61.** *Macone,* 277 F.3d at 9 (*citing Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 569–570, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

**62.** *Nestor Colon Medina & Sucesores, Inc. v. Custodio,* 964 F.2d 32, 45 (1st Cir.1992).

ably amount to conscience-shocking behavior. Rather, conscience-shocking behavior "must be stunning." [63]

■ Plaintiff alleges that Defendant Barron was biased against the project because he owned land close to the development plot. This is insufficient, however, to violate due process. There is no evidence that Defendant Barron "has a direct, personal and substantial pecuniary interest in the outcome" of the case as required for a due process challenge.[64] The influence, if any, of owning property near the proposed development site on Defendant Barron's vote does not rise to the level of conscience-shocking behavior envisioned by the First Circuit.

■ Similarly, Plaintiff alleges that Defendant O'Regan submitted an opinion article to a local newspaper on the eve of the ZBA vote, expressing negative views about low income housing projects.[65] Plaintiff also alleges that Defendant O'Regan shared information from the ZBA public hearings with newspapers and other media outlets to cast the development project in a negative light.[66] These allegations fail to support a substantive due process claim. The First Circuit noted that "members of local boards have considerable leeway for the free exercise of their personal views before any possible due process claim might exist." [67] This court finds Defendant O'Regan's exercise of his First Amendment rights, even if it did cast the project in a negative light, fails to shock the conscience.

■ Nor does the Town of Stoughton's conduct hint of a "truly horrendous situation." Even if the Town did, in fact, delay Plaintiff's application, provide free copies of Plaintiff's documents to neighborhood groups, expedite other projects, and refuse to provide copies of public documents to Plaintiff, none of these acts—individually or in the aggregate—rises to the level of conscience-shocking conduct. The ZBA convened public hearings and meetings to canvass members of the community for their opinions. These meetings also provided Plaintiff with notice about the status of its application. This is hardly the conscience-shocking conduct needed to trigger review by a court.

Simply put, Plaintiff does not have the requisite property interest. None of the Defendants' alleged misconduct rises to the level necessary to support a substantive due process challenge. The ZBA's conduct, as a body or that of its individual members, was not conscience-shocking or egregious. Accordingly, Plaintiff's substantive due process claim fails.

### 3. Equal Protection

■ In order to establish an equal protection violation, Plaintiff must assert both that (1) it was selectively treated, as compared with others similarly situated; and (2) the treatment stemmed from "impermissible considerations such as race, reli-

**63.** *Pagan v. Calderon,* 448 F.3d 16, 32 (1st Cir.2006) (citations omitted). *See also PFZ Props.,* 928 F.2d at 32 (holding that delay tactics do not rise to the level of a substantive due process claim); *Creative Env'ts, Inc. v. Estabrook,* 680 F.2d 822, 832 n. 9 (1st Cir. 1982) ("[P]roperty is not denied without due process simply because a local planning board rejects a proposed development for erroneous reasons or makes demands which arguably exceed its authority under the relevant state statutes.").

**64.** *New York State Dairy Foods, Inc. v. Ne. Dairy Compact Comm'n,* 198 F.3d 1, 13 (1st Cir.1999).

**65.** Compl. at ¶ 77.

**66.** *Id.* at ¶ 76.

**67.** *Raskiewicz v. Town of New Boston,* 754 F.2d 38, 45 n. 5 (1st Cir.1985).

gion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." [68]

Apart from conclusory statements, Plaintiff has produced no evidence that it was treated differently than similarly situated entities. This failure alone is fatal to Plaintiff's equal protection claim.[69] But Plaintiff also fails to show that the Town weighed impermissible considerations. Despite advancing legal conclusions that the Town influenced public boards to visit economic damage upon Plaintiff, Plaintiff has adduced no evidence that the Town did so with malicious intent or bad faith. Indeed, the Town actually *approved* Plaintiff's proposal, albeit subject to certain conditions. The fact that the Town did not act as expeditiously as Plaintiff wanted does not mean the Town violated its constitutional rights.

In addition, this court notes that the First Circuit has expressed "extreme reluctance to entertain equal protection challenges to local planning decisions." [70] Specifically,

> Every appeal by a disappointed developer from an adverse ruling by a local Massachusetts planning board necessarily involves some claim that the board exceeded, abused, or "distorted" its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason. It is not enough simply to give these state law claims constitutional labels such as "due process" or "equal protection" in order to raise a substantial federal question under section 1983.[71]

Accordingly, Plaintiff's equal protection claim fails.

## III. CONCLUSION

For the foregoing reasons, this court GRANTS Defendants' *Partial Motion for Judgment on the Pleadings as to Counts II and III* [# 12]. Accordingly, Defendant Horsley Witten's *Motion to Dismiss* [# 8] is DENIED AS MOOT. Because the court declines to exercise supplemental jurisdiction in this matter, Plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE.

An Order has issued.

### ORDER

For the reasons in the accompanying Memorandum, this court hereby orders that:

1. Defendants Sherm Epro, Jerald S. Savage, Herbert Musmon, Peter Barron, Robert O'Regan and Town of Stoughton's *Motion for Judgment on the Pleadings as to Counts II and III* [# 12] is GRANTED.

2. Defendant Horsley Witten Group's *Motion to Dismiss* [# 8] is DENIED AS MOOT.

3. Plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

---

**68.** *See, e.g., Yerardi's Moody St. Rest. & Lounge, Inc. v. Bd. of Selectmen,* 878 F.2d 16, 21 (1st Cir.1989).

**69.** *See Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.,* 246 F.3d 1, 10 (1st Cir.2001) (holding that plaintiff's "failure to allege that its co-applicants were 'similarly situated' suffices to dispose of" the case).

**70.** *Macone,* 277 F.3d at 10.

**71.** *Creative Env'ts,* 680 F.2d at 833.